Filed 7/17/14 (unmodified opn. attached)

CERTIFIED FOR PARTIAL PUBLICATION*

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOANNE PEAKE, et al., | D061267 |
| Plaintiffs and Appellants, | (Super. Ct. No. 37-2010-00085519-CU-OR-CTL) |
| v. | |
| MARVIEL UNDERWOOD, et al., | ORDER MODIFYING OPINION AND DENYING REQUEST FOR REHEARING |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |

THE COURT:

Appellants' petition for rehearing is DENIED.

It is ordered that the opinion filed herein on June 25, 2014, be modified as follows:

1.      On page 3, the third sentence of the second paragraph is deleted and replaced with the following sentence:

However, as we shall explain, the court's exercise of discretion was justified for several reasons particular to this case, including that Peake's claims were inconsistent with the admitted facts and well-settled law, and the record

---

*      Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of Discussion part II.

reflects that Peake's trial counsel had no reasonable belief in the validity of the claims.

2.    The second sentence of the second paragraph commencing on page 27 and continuing to page 28 is deleted and replaced with the following sentence:

The record before us presents an appropriate case for sanctions because: (1) under well-settled law Peake's substantive claims are clearly without merit; (2) appellants did not present any colorable legal or factual argument to the trial court supporting an extension of existing law to establish liability in this case; (3) before and during the safe harbor period, Ferrell's counsel set forth the specific factual and legal grounds supporting his position that Peake's claims were without merit; and (4) appellants engaged in conduct supporting the conclusion that they did not reasonably believe the claims had any merit.

3.    The last sentence in the second complete paragraph on page 28 is deleted and replaced with the following sentence:

On this record, it is reasonable to infer that Peake added these claims without any reasonable belief that they were legally and factually supported. **There is no change in judgment.**

McCONNELL, P. J.

Copies to:  All parties

2

Filed 6/25/14 (unmodified version)

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOANNE PEAKE et al., | D061267 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2010-00085519-CU-OR-CTL) |
| MARVIEL UNDERWOOD et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel Pressman, Judge. Affirmed.

Boudreau Williams and Jon R. Williams for Plaintiffs and Appellants.

Wolfgang F. Hahn + Associates and Wolfgang F. Hahn for Defendant and Respondent Marviel Underwood.

Stavros & Associates and Mark D. Stavros for Defendants and Respondents Dunn Real Estate & Development Co., Inc. and Paul Ferrell.

Joanne Peake purchased a home from Marviel and Deanna Underwood. About two years later, Peake brought an action against the Underwoods and the Underwoods'

---

[*]     Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of Discussion part II.

real estate agent, Paul Ferrell.[1]  Peake sought to recover damages for defendants' alleged failure to disclose defective subfloors in the home.

After the case had been pending for more than one year, Ferrell moved for terminating and monetary sanctions against Peake and her counsel Norman Shaw under Code of Civil Procedure section 128.7 (section 128.7).  Section 128.7 provides a trial court with the discretionary authority to impose sanctions when a party files a pleading that is factually or legally frivolous.  Ferrell argued Peake's claims were factually and legally frivolous because the undisputed evidence showed Ferrell had fulfilled his statutory and common law disclosure duties, and Peake had actual notice of facts disclosing prior problems with the subfloors.  Peake declined to dismiss the action during the statutory safe harbor period, and instead amended her complaint to add claims similar to claims she had previously dismissed.

After a hearing, the court found Ferrell met his burden to show Peake's claims were "without legal or evidentiary support" and Peake's continued maintenance of the lawsuit demonstrated "objective bad faith" warranting section 128.7 sanctions.  As sanctions, the court dismissed Peake's claims against Ferrell and ordered Peake and her attorney to pay Ferrell $60,000 for his attorney fees incurred in defending the action.

On appeal, Peake and Shaw (collectively appellants) challenge these sanctions. We determine the court acted within its discretion in awarding the section 128.7

---

[1]     Peake also sued Ferrell's brokerage firm, Dunn Real Estate & Development Co., Inc., dba Prudential Dunn Realtors.  We refer collectively to Ferrell and his brokerage firm as Ferrell.

2

sanctions. The record supports that no reasonable attorney would have concluded Peake's statutory and common law claims against Farrell were factually and legally supported. In particular, the facts admitted by Peake show that during escrow Ferrell provided Peake with photographs and reports disclosing problems with the residence's subflooring, satisfying his legal obligations to the buyer. Having provided this information, Ferrell—who served only as the *sellers*' listing agent—did not owe the buyer any additional statutory or common law duties, and there was nothing in Ferrell's communications that would have misled a reasonable buyer.

In affirming the sanctions order, we do not intend to suggest sanctions should be routinely awarded. Our adversary system requires that attorneys and litigants be provided substantial breathing room to develop and assert factual and legal arguments. However, as we shall explain, the court's exercise of discretion was justified for several reasons particular to this case, including that Peake's claims were inconsistent with the admitted facts and well-settled law, and the record reflects that Peake's trial counsel had no honest or reasonable belief in the validity of the claims.

In the unpublished portion of the opinion, we reject Peake's separate appellate argument that the court erred in awarding the Underwoods prevailing party attorney fees after the court granted the Underwoods' motion to compel arbitration and Peake then dismissed her action against the Underwoods.

FACTUAL AND PROCEDURAL SUMMARY

*Complaint*

In 2007, the Underwoods purchased a home and were represented by real estate agent Ferrell in the transaction. About one year later, the Underwoods sold this home to Peake. The Underwoods were again represented by Ferrell, and Peake was represented by her own real estate agent (Tiffany Kilcoyne).

Two years later, in February 2010, Peake sued the Underwoods, Ferrell, Kilcoyne, the termite inspector, and the home inspector. Peake alleged "a water intrusion incident whereby standing water was caused to wick into the foundation" had previously occurred, "causing the foundation and attached flooring structures to deteriorate." She alleged she "only became aware of the extent of the [water-intrusion] damage when her son's foot recently went through a bathroom floor."

Peake alleged the Underwoods had been aware of the unrepaired water damage and the deteriorated floor structure at the time of the sale but failed to disclose these facts. She further alleged the Underwoods knew or should have known, and failed to disclose, that the repairs performed on the property "were not proper and did not comply with applicable building standards and codes." Peake asserted claims against the Underwoods for breach of contract, fraud, concealment, negligent misrepresentation, and negligence.

With regard to Ferrell, Peake alleged he "fail[ed] to conduct a competent and diligent inspection" and "fail[ed] to disclose information about the true condition of the [residence] including water damage" that he knew or should have known. Peake also alleged that Ferrell owed her "a duty to fully and completely disclose all known material

4

defects, failures and deficiencies" concerning the residence. Based on these allegations, Peake asserted causes of action against Ferrell for: (1) breach of statutory duties (Civ. Code, §§ 2079, 1102 et seq.); (2) negligence; (3) breach of fiduciary duty; and (4) constructive fraud.[2]

A few months after she filed her complaint, Peake stipulated to strike all of her claims against Ferrell except her statutory claim. Ferrell's counsel then sent numerous emails to Peake's counsel (Shaw), explaining the legal and factual deficiencies of Peake's statutory claim and encouraging Shaw to consult with a real estate standard-of-care expert. In the emails, Ferrell's counsel emphasized that Ferrell had provided Peake with all the information in his possession, including documents showing possible problems with the subflooring, and noted an agent's statutory duties are limited to a visual inspection. Ferrell's counsel reminded Shaw of his ongoing duty to reevaluate the merits of Peake's claim, and warned that if Peake did not dismiss her claim, Ferrell would seek sanctions from Peake and Shaw under section 128.7.

Shaw did not take any action in response to these emails, and conducted no affirmative discovery after filing the complaint.

*Ferrell's Sanctions Motion Served on Peake and Her Counsel*

About one year after the complaint was filed, in March 2011, Ferrell served Peake and her attorney with a section 128.7 sanctions motion. In the motion, Ferrell contended that Peake's sole claim asserted against him (the statutory cause of action) had no factual

---

[2] All undesignated statutory references are to the Civil Code except for the sanctions statute (Code Civ. Proc., § 128.7) or as otherwise specified.

or legal basis, and was objectively frivolous. Ferrell argued that the cited statutes (sections 2079 and 1102) required that a real estate agent disclose only visible defects and the subfloor water intrusion problem was not visible on a reasonable inspection. He also argued that he went beyond his limited statutory duties by providing Peake with all relevant reports that would have disclosed problems with the subfloors and identified case law providing that the statutes did not require a seller's agent or broker to independently verify a seller's representations.

In support of his sanctions motion, Ferrell submitted several documents.

First, he submitted the three-page statutory transfer disclosure statement provided to Peake during escrow (Transfer Disclosure statement). In the form, the Underwoods checked a box indicating they were *not* aware of any "[f]looding, drainage or grading problems" on the property, and signed at the bottom of this page. However, this portion of the document stated: "**THE[SE] . . . ARE REPRESENTATIONS MADE BY THE SELLER(S) AND ARE NOT THE REPRESENTATIONS OF THE AGENT(S), IF ANY.**" On the third page of this document, Ferrell signed the section involving a seller's agent's disclosures. In that section, Ferrell indicated that Peake should see his "Visual Inspection Checklist" *and* the "reports and disclosures" from the previous owner. (Some capitalization omitted.)

Second, Ferrell submitted a copy of the referenced Visual Inspection Checklist. On this document, next to the preprinted entry for "**LANDSCAPING**," Ferrell wrote "SEE DISCLOSURES ON DRAINAGE UPGRADES BY PREVIOUS OWNER." And next to the entry for "**FOUNDATION/SLAB**," Ferrell wrote that he observed a "SOFT

6

SPOT IN SUBFLOOR IN ONE BEDROOM."  Next to the form's "**OTHER**" entry, Ferrell wrote "SEE PAST INSPECTION REPORTS, DRAINAGE UPGRADE REPORT AND WORK BY CIVIL ENGINEER, KENNETH DISCENZA [phone number] AND BOND CONSTRUCTION.  DRAINAGE IMPROVEMENTS WERE PERFORMED IN TWO SEPARATE PROJECTS."

Third, Ferrell submitted Peake's acknowledgement that she had received numerous documents provided to the Underwoods in the previous escrow.  These documents included a January 4, 2007 physical inspection report, known as the 2007 Focus report.  It is undisputed that this report disclosed substantial problems and decay in the subflooring of the home.  Peake concedes for purposes of this appeal that she received this 2007 Focus report during the escrow period.

Ferrell also proffered excerpts of Peake's deposition testimony.  In this testimony, Peake acknowledged that during the escrow period she was aware the home had prior drainage problems and that extensive repairs to the drainage system had been performed.  She testified that she and her own real estate agent had discussed Ferrell's disclosure "that there had been . . . drainage work done, and there was an invoice from the construction company that the work had been done."  She said that she did not inquire further about this disclosure "because I had . . . two [other] inspection reports [by her own retained inspection experts] that said that . . . everything was fine; so I assumed the work done was fine."  Peake further acknowledged that before escrow closed, the Underwoods provided her with a "Seller's Additional Disclosures" document stating that an "extensive drainage system is installed and it was added on before [the Underwoods] purchased the

7

property" at a cost of approximately $13,000.  Peake stated that she remembered that she and her agent "looked at the plans from Bond, the architect, and saw that all that work had been done."

Although she did not specifically recall reviewing the 2007 Focus report before escrow closed, Peake acknowledged at her deposition that this report "show[s] damage under the floor."  She also said she noticed there was some "sponginess" on one bedroom floor during her walk-through of the property before the sale closed.  Peake additionally said she was aware there was a sump pump at the back of the property, and she understood the purpose of a sump pump is to "take water out, if there is any excess water, in a basement."

In addition to the real estate documents and deposition testimony submitted in support of his sanctions motion, Ferrell discussed Peake's complete lack of offensive discovery, and her counsel's disregard for the numerous cautionary emails urging him to reevaluate Peake's claim.

*Peake's Amendments to Complaint in Response to Sanctions Motion*

After Ferrell served the sanctions motion, he did not immediately file the motion because of the statutory 21-day safe harbor requirement.[3]  During this safe harbor period, Peake did not dismiss her statutory claim against Ferrell and instead she moved for leave

---

[3]    Before filing a section 128.7 sanctions motion, a party must first *serve* the motion on the opposing party and provide the party 21 days to withdraw the offending pleading. (§ 128.7, subd. (c)(1).)  This safe harbor period permits a party to withdraw a questionable pleading without penalty.  (*Day v. Collingwood* (2006) 144 Cal.App.4th 1116, 1127.)

8

to amend her complaint to *reassert* the three common law claims (negligence, breach of fiduciary duty, and constructive fraud) she had previously stricken by stipulation, and to *add* new causes of action for intentional fraud and negligent concealment against Ferrell.

The trial court denied Peake's motion to amend regarding the previously stricken claims because they were based on the same facts and legal theories, but allowed the amendments as to the intentional fraud and negligent concealment claims. The facts alleged in these new claims were similar to the facts alleged in the three dismissed claims, but they also included allegations that Ferrell had actual knowledge of the defective subfloors and that he made affirmative misrepresentations to Peake regarding the condition of the floors.

*Filed Sanctions Motions and Opposition Arguments*

After these amendments were permitted and several months after the safe harbor period expired, Ferrell filed his sanctions motion. The motion was essentially identical to the version initially served on Peake and did not address the new fraud and negligent concealment claims.

As the centerpiece of their opposition papers, Peake and Shaw stated that Peake "is pursuing her cause of action based on [Civil Code sections] 1102 and 2079 *because* the Transfer Disclosure Statement *signed by Paul Ferrell* made an affirmative representation that the property had no drainage problems." (Italics added.) Specifically, Peake argued that "Ferrell knew there were flooding and drainage problems with the property and yet he inexplicably checked the 'No' box on the Transfer Disclosure Statement when asked about drainage problems." Based on this argument, Peake

9

contended that "when a real estate professional makes a clearly false statement on the Transfer Disclosure Statement, there is no basis for that real estate agent to be awarded sanctions" under section 128.7.[4]

In support of their assertion that Ferrell knew about undisclosed problems and inadequate repairs before escrow closed, appellants submitted Peake's declaration stating:

> "Several months after purchasing my home, my son's foot went through the floor.  It became apparent to me for the first time that the floor was suffering from significant rotting.  [¶] . . . When I told Paul Ferrell [that my son's foot went through the floor] and asked him [in a phone conversation] about earlier repairs and improvements to the property[,] I asked why the floor was rotted.  He responded by saying that when the Underwoods initially purchased the home, they planned on making extensive improvements and repairs.  However, shortly after purchasing the home, Mr. Underwood, who was a professional football player with the NFL was injured and lost his income.  Mr. Ferrell explained that since Mr. Underwood lost his income, the Underwoods were unable to complete the improvements to the drainage system and repairs to the floor."

In her declaration, Peake also stated that although she was "given various written disclosures" before escrow closed, she "was never told the drainage repairs were not completed prior to purchasing the home, nor was [she] told the floor needed significant repairs but the Underwoods could not afford to complete them."  Peake said:

> "[A]t no time prior to purchasing the house did Paul Ferrell ever tell me that the Underwoods needed to make additional repairs to the property, but stopped doing so because Mr. Underwood lost his income.  Had I know that some repairs were made to the drainage

---

4       As discussed, this argument was factually inaccurate because the Underwoods, and not Ferrell, made the representation regarding the lack of drainage problems.  The form stated the representations were made solely by the seller and were not endorsed by the seller's agent.

system, but that the repairs were not completed, I would not have bought the property."

Peake and Shaw further supported their opposition with an expert declaration from Richard Snyder, an experienced realtor and property manager. Snyder stated he was retained to provide an opinion on whether Ferrell met the standard of care under section 2079, and that he concluded Ferrell acted below the applicable standard because Ferrell did not "red-flag[ ] the drainage issue by disclosing in writing that repairs were not completed." Snyder based this opinion on several assumed facts. First, Snyder stated that in the Transfer Disclosure statement, *Ferrell* had responded " 'No' " to the "question whether . . . *Ferrell* was aware of any flooding, draining or grading problems." (Italics added.) Second, Snyder relied on the fact that in his Visual Inspection Checklist, Ferrell mentioned the prior *drainage* repair work performed by engineer Discenza and contractor Bond Construction. Third, Snyder relied on Peake's version of her telephone conversation with Ferrell. He said "Given the facts that 1) Paul Ferrell was an agent involved in two sales of the property in 12 months and 2) Paul Ferrell knew the Underwoods ran out of money before fixing the problems, Paul Ferrell should have red-flagged the drainage issue by disclosing in writing that repairs were not completed." Snyder acknowledged that he did not review the numerous reports provided to Peake during escrow (including the 2007 Focus report), but said the content of those disclosures would not have altered his opinion regarding what Ferrell should have disclosed to Peake. He said: "Ferrell is essentially taking the position that he could provide a buyer with a series of reports regarding drainage problems to the property, and withhold the fact that

11

the previous owner could not afford to complete the necessary repairs. In my opinion, it is a breach of the statutory and professional standard of care for a listing agent to provide a series of reports without disclosing the crucial fact: the repairs were never properly completed."

In reply, Ferrell raised the factual error in appellants' opposition brief and Snyder's declaration: appellants and Snyder had both claimed *Ferrell* prepared and endorsed the relevant portion of the Transfer Disclosure statement, but in fact it was the Underwoods who had signed this statement. Appellants thereafter conceded the error and Snyder amended his declaration to correct that discrepancy.

Ferrell also submitted his own declaration in which he denied Peake's version of the phone call after her son's foot went through the bathroom floor. Ferrell additionally stated that before the Underwoods purchased the property, the seller had completed all the drainage improvements recommended by engineer Discenza. Ferrell acknowledged that the property had prior flooding and drainage problems, but said these issues were fully disclosed to Peake during the escrow through his references to the drainage and engineering work and in the documents provided to Peake from the prior escrow.

Ferrell also lodged nine additional cautionary communications sent to attorney Shaw after serving the sanctions motion. Attached to one of them was a declaration from Peake's own real estate agent, who declared that Peake was given "all [the] disclosures and other transaction paperwork" provided by Ferrell and that Peake reviewed all of it.

*Court's Ruling*

After considering the submissions, the court issued a minute order tentatively granting Ferrell's sanctions motion, stating it found "plaintiff and her attorneys' maintenance of her complaint against [Ferrell was] baseless and utterly lacking in legal merit."  In a lengthy explanation, the court said the evidence established that "at the close of escrow, [Peake] had all the information necessary and that the brokers satisfied all their duty by supplying all reports" and "there is nothing that plaintiff or her counsel can point to establishing that Mr. Ferrell failed in his Civil Code §§ 1102 and 2079 inspection disclosure duties."  The court also emphasized that Peake had more than one year to investigate her claims, and Ferrell's counsel had sent Shaw repeated admonitions regarding the specific factual and legal flaws in Peake's claims.  The court concluded that Shaw's implied certification of legal and factual merit under section 128.7 "was without legal or evidentiary support and that the continued maintenance of th[e] meritless lawsuit [against Ferrell] demonstrates objective bad faith warranting CCP § 128.7 sanctions."

During the hearing, Peake's counsel focused on the evidence showing Ferrell had actual notice that the subfloor repairs had allegedly not been performed (or had not been properly performed) and that Ferrell failed to disclose this information and/or that his partial disclosures regarding repairs were misleading.  Peake's counsel also reminded the court that he had amended the complaint to add two common law claims.  The court responded:  "I'll take this under submission.  [¶]  And I do appreciate your pointing out those two causes of action."

13

After the hearing, the court adhered to its prior conclusion that Ferrell met his burden to show Peake's claims were "utterly lacking in legal merit" and appellants' continued maintenance of the claims warranted sanctions under section 128.7. The court dismissed Peake's claims against Ferrell and sanctioned Peake and Shaw, jointly and severally, in the amount of $60,000, reflecting Ferrell's attorney fees incurred in defending the action.

On a separate issue and as explained below, the court had previously granted the Underwoods' motion to compel arbitration under an arbitration provision in the purchase agreement. Shortly after, Peake dismissed her case against the Underwoods based on her understanding that the Underwoods were insolvent. After the dismissal, the Underwoods successfully moved for section 1717 prevailing party attorney fees against Peake.

On appeal, Peake and Shaw challenge the sanctions order and Peake challenges the attorney fees award to the Underwoods.

DISCUSSION

I. *Sanctions Award*

A. *Legal Principles Governing Section 128.7 Sanctions*

Under section 128.7, a court may impose sanctions for filing a pleading if the court concludes the pleading was filed for an improper purpose or was indisputably without merit, either legally or factually. (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 168 (*Guillemin*).) The court here imposed sanctions based on its finding that the claims were legally and factually frivolous. A claim is factually frivolous if it is "not well grounded in fact" and it is legally frivolous if it is "not warranted by existing law or

14

a good faith argument for the extension, modification, or reversal of existing law." (*Id.* at p. 167.) In either case, to obtain sanctions, the moving party must show the party's conduct in asserting the claim was objectively unreasonable. (*Ibid.*) A claim is objectively unreasonable if "any reasonable attorney would agree that [it] is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650; *Guillemin, supra*, at p. 168.)

The Legislature enacted section 128.7 based on Rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.), as amended in 1993 (Rule 11). (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 518, fn. 2; *Guillemin, supra*, 104 Cal.App.4th at p. 167.) Therefore, federal case law construing Rule 11 is persuasive authority on the meaning of section 128.7 (*Guillemin, supra*, 104 Cal.App.4th at p. 167.)

Under Rule 11, even though an action may not be frivolous when it is filed, it may become so if later-acquired evidence refutes the findings of a prefiling investigation and the attorney continues to file papers supporting the client's claims. (See *Childs v. State Farm Mut. Auto. Ins. Co.* (9th Cir. 1994) 29 F.3d 1018, 1025.) Thus, a plaintiff's attorney cannot "just cling tenaciously to the investigation he had done at the outset of the litigation and bury his head in the sand." (*Ibid.*) Instead, "to satisfy [the] obligation under [section 128.7] to conduct a reasonable inquiry to determine if his [or her] client's claim was well-grounded in fact," the attorney must "take into account [the adverse party's] evidence." (*Ibid.*)

Section 128.7 provides for a 21-day period during which the opposing party may avoid sanctions by withdrawing the offending pleading or other document. (§ 128.7,

15

subd. (c)(1); see *Li v. Majestic Industry Hills LLC* (2009) 177 Cal.App.4th 585, 590-591.) By providing this safe harbor period, the Legislature designed the statute to be "remedial, not punitive." (*Li, supra*, 177 Cal.App.4th at p. 591.) When a party does not take advantage of the safe harbor period, the "statute enables courts to deter or punish frivolous filings which disrupt matters, waste time, and burden courts' and parties' resources." (*In re Mark B.* (2007) 149 Cal.App.4th 61, 76.)

A court has broad discretion to impose sanctions if the moving party satisfies the elements of the sanctions statute. (See *Kojababian v. Genuine Home Loans, Inc.* (2009) 174 Cal.App.4th 408, 421.) However, the sanctions statute " 'must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously. Forceful representation often requires that an attorney attempt to read a case or an agreement in an innovative though sensible way. Our law is constantly evolving, and effective representation sometimes compels attorneys to take the lead in that evolution.' " (*Guillemin, supra*, 104 Cal.App.4th at pp. 167-168.) Moreover, a sanction "shall be limited to what is sufficient to deter repetition of [the improper] conduct or comparable conduct by others similarly situated." (§ 128.7, subd. (d).)

We review a section 128.7 sanctions award under the abuse of discretion standard. (*Guillemin, supra*, 104 Cal.App.4th at p. 167.) We presume the trial court's order is correct and do not substitute our judgment for that of the trial court. (*Shelton v. Rancho Mortgage & Investment Corp.* (2002) 94 Cal.App.4th 1337, 1345.) To be entitled to relief on appeal, the court's action must be sufficiently grave to amount to a manifest miscarriage of justice. (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 867.)

16

B. *Analysis*

When the court ruled on the sanctions motion, Peake's complaint asserted both statutory (sections 2079 and 1102) and common law (fraud and negligent concealment) claims against Ferrell. Peake and Shaw contend the court erred in concluding that both sets of claims were factually and legally unsupported and were objectively unreasonable. These contentions are unavailing.

1. *Statutory Claim*

Peake's statutory cause of action is based on sections 2079 and 1102. Section 2079 imposes on a seller's agent the duty "to conduct a reasonably competent and diligent visual inspection of the property offered for sale and to disclose to [the] prospective purchaser all facts materially affecting the value or desirability of the property that an investigation would reveal. . . ." (§ 2079, subd. (a).) "The inspection to be performed pursuant to this article does not include or involve an inspection of areas that are reasonably and normally inaccessible . . . ." (§ 2079.3.) Accordingly, a seller's real estate agent has a statutory duty to disclose only visible defects, i.e., to disclose only what a "reasonably competent and diligent visual inspection of the property" would reveal. (§ 2079, subd. (c); *Wilson v. Century 21 Great Western Realty* (1993) 15 Cal.App.4th 298, 308 (*Wilson*).) Section 1102 et seq. imposes these same limited duties, and requires that all disclosures "be made in good faith." (§§ 1102.7, 1102.1, subd. (a), 1102.6; see *Robinson v. Grossman* (1997) 57 Cal.App.4th 634, 642-643 (*Robinson*).)

Peake alleged that Ferrell breached these statutory duties by failing to disclose the defective condition of the subfloors. However, it is undisputed that this alleged defect

17

was not visible and would not have been apparent during a reasonable property inspection. Thus, as a matter of law, Ferrell did not breach his statutory duties under sections 2079 and 1102 et seq. (See *Wilson, supra*, 15 Cal.App.4th at p. 308.)

Peake and Shaw do not challenge this conclusion under existing authority, but suggest it was objectively reasonable to seek an expansion of the statutes to require real estate brokers to "*fully disclose facts which the broker knows, whether or not those facts could be revealed by a simple visual inspection*" and thus "*to affirmatively disclose everything they knew about a specific property which may materially affect the value or desirability of that property.*" Appellants characterize this argument as a "*functional* interpretation" of the statute, rather than a "*mechanical*" one. They argue section 2079's disclosure requirements *should* include a duty to disclose "*all information*" that Ferrell knew regarding the status of the repairs to the subflooring.

This argument—raised for the first time on appeal—is not properly before us. Because a trial court has broad discretion in ruling on a sanctions motion, it is incumbent on the party opposing the motion to proffer all factual and legal theories showing the party's challenged assertions were not frivolous and had a least some merit. By failing to raise this theory before the trial court, the trial court was not provided the opportunity to evaluate the theory as part of its exercise of discretion. Thus, the point is forfeited.

In any event, appellants' argument is not founded on any reasonable legal principles. In interpreting a statute, a court is bound by the words of the statute and must give those words a plain and commonsense meaning. (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100,

18

1106-1107.) "If the statutory language is unambiguous, 'we presume the Legislature meant what it said, and the plain meaning of the statute governs.' [Citation.]" (*Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 485; accord *Moreno v. Quemuel* (2013) 219 Cal.App.4th 914, 918.)

Section 2079, subdivision (a) states that a seller's agent's duties are limited to disclosing defects that are apparent from a "visual" inspection, and section 2079.3 makes clear that this duty does not "include or involve an inspection of areas that are reasonably and normally inaccessible to [such] an inspection." Thus there is no room in these statutes for seeking to expand the statutory duties to cover the factual circumstances present in this case.

Appellants' discussion of the legislative history underlying section 2079's enactment is not helpful. "[I]t is the role of the judiciary to simply ascertain and declare what is in terms or in substance contained in the statute, not to insert what has been omitted or omit what has been included. . . . [T]he courts 'may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.' [Citation.]" (*People v. Massicot* (2002) 97 Cal.App.4th 920, 925.)

In any event, there is nothing in the legislative history supporting appellants' proposed statutory interpretation. The Legislature's stated intent in enacting section 2079 was to clarify the scope of a real estate agent's disclosure duties and thus to "facilitate the issuance of professional liability insurance" coverage for real estate licensees. (§ 2079.12, subd. (a); see *Robinson, supra*, 57 Cal.App.4th at pp. 640-642.) Appellants'

broad "functional" interpretation is inconsistent with this legislative intent to clarify and limit a seller's agent's duties to a buyer. Appellants' reliance on *Robinson, supra*, 57 Cal.App.4th 634 is unavailing. The *Robinson* court confirmed the limited nature of the listing agent's statutory disclosure duties under section 2079 and specifically rejected the plaintiff's argument that this duty includes an obligation to independently verify or disclaim the accuracy of the seller's representations.

Appellants' argument regarding the proper interpretation of sections 2079 and 1102 is not well founded in law or fact. The trial court acted within its discretion in concluding that Peake's claims under these statutes were objectively unreasonable.

### 2. *Common Law Fraud Claims*

Peake and Shaw alternatively argue that the court erred in concluding that Peake's common law intentional and negligent concealment claims were objectively unreasonable and thus warranted sanctions.

In asserting the common law concealment claims in her amended complaint, Peake alleged Ferrell knew the residence "contained areas of severe water intrusion damage" when the Underwoods purchased the property and knew the Underwoods had not repaired the water-damaged subfloor areas of the home. Peake alleged Ferrell failed to disclose these facts *and* that Ferrell affirmatively misrepresented that he "knew of no water intrusion and/or other damage to the [property]."

On appeal, appellants do not suggest there are any facts showing Ferrell made affirmative misrepresentations regarding the defective subfloors, but argue there was a

20

reasonable basis to conclude he may be held liable for fraudulent concealment for failing to disclose his knowledge regarding the subfloors' unrepaired condition.

In enacting section 2079, the Legislature did not intend to preclude a real estate agent's liability for fraud. (§§ 1102.8, 2079.12; see *Williams v. Wells & Bennett Realtors* (1997) 52 Cal.App.4th 857, 859-865.) However, because a seller's agent has no fiduciary relationship with a buyer, the courts have strictly limited the scope of an agent's disclosure duties under a fraudulent concealment theory. " 'In the context of a real estate transaction, "it is now settled in California that where the seller knows of facts materially affecting the value or desirability of the property . . . *and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer.* [Citations.]". . .' " (*Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399, 410 (*Assilzadeh*); *Shapiro v. Sutherland* (1998) 64 Cal.App.4th 1534, 1544; see *Lingsch v. Savage* (1963) 213 Cal.App.2d 729, 735; see also *San Diego Hospice v. County of San Diego* (1995) 31 Cal.App.4th 1048, 1055.) This duty applies to the seller or the seller's agent. (*Holmes v. Summer* (2010) 188 Cal.App.4th 1510, 1518-1519.)

Peake and Shaw contend they presented evidence showing Ferrell knew the defective condition of the subfloors through Ferrell's prior representation of the Underwoods. In support, they discuss that Ferrell was the agent when the Underwoods purchased the property and the fact that the prior owner had disclosed the existence of substantial water/drainage problems at the time of that prior sale. They also cite Ferrell's statement in the Visual Inspection Checklist in the "OTHER" category, stating: "See past

21

inspection reports, drainage upgrade report and work by civil engineer, Kenneth Discenza . . . and Bond Construction.  Drainage improvements were performed in two separate projects."  Appellants also rely on Peake's declaration describing her telephone conversation with Ferrell, in which she stated that Ferrell responded to her inquiry regarding the incident with her son's foot falling through the bathroom floor by stating that the Underwoods ran out of money to complete necessary repairs.

Taken together, these facts arguably support an inference that Ferrell was aware there were problems with the subfloors when Peake purchased the property.  However, even assuming this awareness, a seller's agent has no affirmative duty to disclose latent defects unless the agent "*also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer*."  (*Holmes v. Summer, supra*, 188 Cal.App.4th at p. 1518, italics added; *Assilzadeh, supra*, 82 Cal.App.4th at p. 410.)

The undisputed evidence shows Peake had notice of the prior problems with the subfloors caused by a water intrusion incident and was aware that repairs to the drainage systems had been made (including the addition of french drains and sump pumps).  The theory of Peake's case was that although the drainage system repairs may have fixed the drainage problem, they did not address (or negligently addressed) the damage to the subflooring caused by the water intrusion.  However, Peake admits that she was provided the 2007 Focus report during the escrow period and acknowledges that this report disclosed the damaged subfloors.  As her counsel noted at the sanctions hearing, the 2007 Focus report contains photographs " 'that shows the rotted wood.' "  Additionally, Peake admitted at her deposition that during the escrow period she was aware of some

22

"sponginess" in the floor of one bedroom and acknowledges that Ferrell specifically noted this fact in his Visual Inspection Checklist. Peake further admitted that she reviewed the work by the contractor who performed repairs to the drainage system. These facts would have put any reasonable person on inquiry notice of the need to conduct further investigation regarding the subfloors and whether any issues remained after the drainage systems had been repaired. (See *Pagano v. Krohn* (1997) 60 Cal.App.4th 1, 9 [once seller's agent discloses existence of possible water intrusion, no duty to elaborate or disclose further details].)

This record indisputably establishes that Ferrell provided Peake with disclosures and reports disclosing the existence of prior drainage issues and damage to the subfloors. These were the essential facts regarding the residence's condition, and they were not only within Peake's "diligent attention," they were actually known to her prior to the close of escrow. Thus, Peake's intentional and negligent concealment claims against the listing agent were without any arguable merit.

In their appellate briefs, appellants suggest that Ferrell could be held liable for intentional fraud by a half-disclosure, i.e., by affirmatively representing that repairs had been made to the drainage system, leading Peake to believe the problems with the subfloors had been fixed. Appellants argue that when Ferrell disclosed in the Visual Inspection Checklist that engineer Discenza and contractor Bond made *drainage* improvements, Ferrell should also have disclosed that the *subfloors* remained unrepaired. However, appellants presented no evidence that Peake actually interpreted Ferrell's statements in this manner. Moreover, it is not reasonable to infer that because drainage

23

improvements were made, this gave rise to an expectation that the subfloor must also have been repaired. Peake admits that before the transaction closed she was in possession of the 2007 Focus report that disclosed substantial defects in the subfloors and appellants concede in their reply brief that "[n]owhere . . . did the record from the work by Discenza or Bond Construction indicate that the subfloors had been repaired or addressed as a result of any prior flooding or water intrusion." Moreover, Peake testified that she reviewed contractor Bond's plans and saw the work that had been performed. Thus, Peake would have known from the 2007 Focus report that the subfloor was damaged, and would have seen from the Discenza and Bond records the extent to which the subfloor had or had not been repaired. In short, Peake had constructive knowledge of problems with the subflooring and thus was on inquiry notice.

Appellants also rely on their expert's declaration to establish their claims had factual and legal merit. However, as appellants concede, Snyder erroneously assumed that Ferrell had signed the relevant portions of the statutory transfer disclosure statement when, in fact, it was the Underwoods who did so. And although Snyder corrected this erroneous information, Snyder never stated or indicated that his conclusions remained unchanged after the correction of this significant fact. Further, Snyder's opinions regarding the applicable standard of care are directly at odds with well-settled case law, and therefore are unpersuasive. Additionally, Snyder conceded he did not review the numerous written disclosures given to Peake during the escrow period. In a case that hinges on the adequacy of written disclosures, the trial court could properly have

disregarded the opinion of an expert who failed to review those disclosures. (See *Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510-511.)

Appellants alternatively contend the sanctions order must be reversed on the common law claims because the court did not consider these claims in awarding sanctions.

This contention is unsupported by the record. In their opposition to the sanctions motion, appellants specifically discussed the case law underlying Peake's common law claims and Ferrell referred to these claims at least twice in his reply brief in the proceedings below. Additionally, at the hearing on the sanctions motion, Peake's attorney raised the common law claims, and the court responded by expressly acknowledging these claims and indicating it would consider the claims when it took the matter under submission. Consistent with this assurance, the court issued a broad ruling finding the evidence established "that at the close of escrow, plaintiff had all the information necessary and that the brokers satisfied all their duty by supplying all reports." This ruling is sufficient to show the court addressed Peake's claims under both statutory and common law. Absent an indication to the contrary, we are required to presume a court was aware of, and followed, the applicable law and considered all the relevant facts and arguments. (Evid. Code, § 664, see *Whyte v. Schlage Lock Co*. (2002) 101 Cal.App.4th 1443, 1451; *GGIS Ins. Services, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1493, 1504, fn. 1.)

On our own motion, we requested the parties to provide supplemental briefing on the issue whether Ferrell was required to file a separate motion and provide a second safe

25

harbor period after Peake added the common law claims in response to Ferrell's sanctions motion. Although the statutory language does appear to support the need for an additional safe harbor period after an amended pleading is filed (see § 128.7, subd. (c)(1)), we conclude the lack of a new motion and safe harbor period did not preclude the court from awarding sanctions under the circumstances here.

First, appellants never raised the issue below or in their appellate briefs; therefore the issue is waived. Second, it appears that any additional safe harbor period would have been futile because it was clear that appellants would not have dismissed their common law claims. Peake responded to the served sanctions motion by *adding* these claims that were based on essentially the same facts as the claims that had been previously dismissed. Additionally, Peake's defense of her common law and statutory claims were based on the same factual and legal assertions. Further, the claims are flawed for the same essential reason—before escrow closed Peake had actual or constructive knowledge of the defective subfloors and Ferrell had no duty to provide additional disclosures to the buyer.

3. *Sanctions Were Appropriate Under the Circumstances of This Case*

Our conclusion that the court properly found Peake's statutory and common law claims were without merit, and there was no arguable factual or legal basis for asserting those claims, does not necessarily answer the question whether sanctions were appropriate under the circumstances of the case.

As with Rule 11 sanctions, section 128.7 sanctions should be "made with restraint" (*Schlaifer Nance & Co. v. Estate of Warhol* (2d Cir. 1999) 194 F.3d 323, 334), and are

26

not mandatory even if a claim is frivolous. (*Kojababian v. Genuine Home Loans, Inc.,* *supra*, 174 Cal.App.4th at p. 422; *Perez v. Posse Comitatus* (2d. Cir. 2004) 373 F.3d 321, 325.) Further, when determining whether sanctions should be imposed, the issue is not merely whether the party would prevail on the underlying factual or legal argument. Instead, courts should apply an objective test of reasonableness, including whether "any reasonable attorney would agree that [the claim] is totally and completely without merit." (*In re Marriage of Flaherty, supra*, 31 Cal.3d at p. 650; *Guillemin, supra*, 104 Cal.App.4th at p. 168; see *Fahrenz v. Meadow Farm Partnership* (4th Cir. 1988) 850 F.2d 207, 210.) Thus, the fact that a plaintiff fails to provide a sufficient showing to overcome a demurrer or to survive summary judgment is not, in itself, enough to warrant the imposition of sanctions. (See *Guillemin, supra*, 104 Cal.App.4th at p. 168; *Segen v. Buchanan Gen. Hosp., Inc*. (W.D.Va. 2007) 552 F.Supp.2d 579, 585; see *Miltier v. Downes* (4th Cir. 1991) 935 F.2d 660, 664-665.)

Because our adversary system requires that attorneys and litigants be provided substantial breathing room to develop and assert factual and legal arguments, sanctions should not be routinely or easily awarded even for a claim that is arguably frivolous. Courts must carefully consider the circumstances before awarding sanctions.

With these principles in mind and considering the entire record, we conclude the court did not abuse its discretion in awarding sanctions. The record before us presents an appropriate case for sanctions because: (1) under well-settled law Peake's substantive claims are clearly without merit; (2) appellants did not present any colorable legal or factual argument to the trial court supporting an extension of existing law to establish

27

liability in this case; (3) before and during the safe harbor period, Ferrell's counsel set forth the specific factual and legal grounds supporting his position that Peake's claims were without merit; and (4) appellants engaged in conduct supporting the conclusion that they did not reasonably or honestly believe the claims had any merit.

With respect to the latter point, when establishing a claim is factually or legally without merit under section 128.7, it is not necessary to show the party acted with an improper motive or subjective bad faith. But the fact that a party does not actually believe in the merits of his or her claim is relevant to the issue whether sanctions are warranted in the particular case. Peake's conduct demonstrated she (and/or her attorney) did not in fact consider her claims to have any valid basis.

First, shortly after filing the lawsuit, Peake dismissed her common law claims against Ferrell (breach of fiduciary duty, negligence, and constructive fraud). In these claims, Peake alleged liability based on Ferrell's failure "to disclose the material defects, failures and deficiencies with the [property] which were known and/or should have been known." The logical inference from the dismissal of these claims is that Peake (or her attorney) recognized those claims were without merit. However, in response to the sanctions motion, appellants immediately sought to reassert the identical claims Peake had previously dismissed and to add two legal theories that were essentially the same as prior fraud allegations. Appellants have never provided an explanation for the earlier dismissal of these same claims. On this record, it is reasonable to infer that Peake added these claims without any honest belief that they were legally and factually supported.

28

Additionally, Peake failed to engage in any affirmative discovery against Ferrell after more than one year of filing the lawsuit. Appellants argue that the lack of discovery had nothing to do with the merits of Peake's case, and instead reflected only Peake's desire to reduce litigation costs and her tactical decision that discovery was unnecessary because the case could be litigated based on the documents in her possession. However, the trial court had an ample basis to reject these assertions and determine the lack of discovery reflected appellants' recognition that the claims were without merit and the lawsuit was primarily a vehicle to extract a settlement from Ferrell. Although the court did not specifically make a finding of subjective bad faith, Peake's failure to seek discovery or otherwise prosecute her claims against Ferrell supports a finding that she and her attorney did not have a good faith belief in their validity and thus that the claims had no actual factual or legal basis.

Further, appellants asserted arguments in their opposition briefs below that incorrectly characterized a significant and critical fact: the identity of the parties signing the statutory transfer disclosure statement. As a centerpiece of Peake's opposition to the sanctions motion, appellants asserted that Ferrell was liable under a statutory and/or fraud theory because he signed the portion of the Transfer Disclosure statement affirmatively indicating there had been no flooding or drainage problems. Peake's expert also initially made the same factual assertion. However, the undisputed evidence shows (and appellants now admit) that Ferrell never signed this portion of the Transfer Disclosure statement or made these affirmative representations. Moreover, appellants concede that under California law a listing agent has no duty to a buyer to independently verify the

29

seller's representations.  (*Robinson, supra*, 57 Cal.App.4th at p. 643.)  By relying on this critical factual misconception in opposing the sanctions motion and in submitting their expert declaration, appellants highlighted the absence of a reasonable factual basis underlying their claims.

The trial court did not abuse its discretion in imposing sanctions.[5]

## II.  *Order Awarding Underwoods' Prevailing Party Attorney Fees*

Peake contends the court erred in awarding the Underwoods section 1717 prevailing party attorney fees after she voluntarily dismissed her claims against them.

### A.  *Factual Background*[6]

Peake asserted causes of action against the Underwoods for breach of contract, fraud, concealment, negligent misrepresentation, and negligence.  In August 2010, the Underwoods moved to compel arbitration based on the purchase agreement's arbitration provision.  Peake opposed the motion.  In April 2011, the court granted the Underwoods' motion and provided a mechanism for selecting the arbitrator.  When the parties still had not agreed on an arbitrator three months later, the court appointed one.

Soon after the court appointed the arbitrator, Peake voluntarily dismissed her claims against the Underwoods based on her understanding that the Underwoods were

---

[5]    We deny Ferrell's request for sanctions on appeal.  We deny the California Association of Realtors' application to file an amicus curiae brief.  We grant appellants' judicial notice request regarding attorney Shaw's reporting the sanctions award to the California State Bar.

[6]    We grant respondent Marviel Underwood's motion to augment the record to include certain documents that were before the trial court on the attorney fees motion.

insolvent. About two months later, the Underwoods moved to recover their attorney fees under the purchase agreement's attorney fees provision, which states: "In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller. . . ."

The Underwoods argued they were prevailing parties under section 1717 because they prevailed on their motion to compel arbitration, which—by virtue of Peake's subsequent voluntary dismissal—was the only contract claim the court adjudicated. Peake responded that section 1717, subdivision (b)(2), bars an award of attorney fees when an action is voluntarily dismissed, and further contended that merely prevailing on an interim procedural motion is insufficient to establish prevailing party status.

The court found the Underwoods were the prevailing parties and awarded them nearly $60,000 in attorney fees.

## B. *Applicable Legal Principles*

"Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (Code Civ. Proc., § 1032, subd. (b).) Attorney fees are "allowable as costs under Section 1032" when they are "authorized by . . . [c]ontract." (Code Civ. Proc., § 1033.5, subd. (a)(10.) "Thus, recoverable litigation costs . . . include attorney fees, but only when the party entitled to costs has a legal basis, independent of the cost statutes and grounded in an agreement . . . upon which to claim recovery of attorney fees." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 606 (*Santisas*).)

31

A "prevailing party" includes, among others, "a defendant in whose favor a dismissal is entered." (Code Civ. Proc., § 1032, subd. (a)(4).) In an action on a contract containing an attorney fees provision, the prevailing party on the contract is "the party who recovered a greater relief in the action on the contract." (§ 1717, subd. (b)(1).) But when a plaintiff dismisses an action containing contract claims, there can be *no prevailing party*—and, therefore, no attorney fee recovery—on those contract claims. (§ 1717, subd. (b)(2) ["Where an action has been voluntarily dismissed . . . , there shall be no prevailing party for purposes of this section."].) "This bar, however, applies *only* to causes of action that are based on the contract and are therefore within the scope of section 1717." (*Santisas, supra*, 17 Cal.4th at p. 617.) Thus, "[i]f the voluntarily dismissed action also asserts causes of action that do not sound in contract, those causes of action are not covered by section 1717, and the attorney fee provision, depending upon its wording, may afford the defendant a contractual right, not affected by section 1717, to recover attorney fees incurred in litigating those causes of action." (*Ibid.*)

"Code of Civil Procedure section 581 allows a plaintiff to voluntarily dismiss, with or without prejudice, all or any part of an action before the 'actual commencement of trial.' " (*Gogri v Jack in the Box Inc.* (2008) 166 Cal.App.4th 255, 261.) " '[C]ommencement of trial' under section 581 is not restricted to only jury or court trials on the merits, but also includes *pretrial* procedures that *effectively dispose of the case.*" (*Id.* at p. 262.) But " 'pretrial procedures not determinative of the case do not preclude voluntary dismissal. . . .' " (*Ibid.*) Accordingly, even when a court has granted a motion to compel arbitration, the plaintiff still retains her absolute right to dismiss her case so

32

long as trial has not commenced—either in the formal sense or in the informal sense of an inevitable adverse determination on the merits. (*Cardiff Equities, Inc. v. Superior Court* (2008) 166 Cal.App.4th 1541, 1549.)

"We review de novo a determination of an award of attorney fees under a contractual provision where, as here, no extrinsic evidence has been offered to interpret the contract, and the facts are not in dispute." (*Kangarlou v. Progressive Title Co., Inc.* (2005) 128 Cal.App.4th 1174, 1177.)

### C. *Analysis*

The Underwoods moved for attorney fees based on their contention they were the prevailing party on the contract under section 1717 because they prevailed on their motion to compel arbitration. However, as Peake correctly asserts, the Underwoods could not have been the prevailing party on the contract under a section 1717 analysis. Although section 1717 permits a prevailing party to recover fees, it specifically provides that where a contract action is voluntarily dismissed, there is no prevailing party. (§ 1717, subd. (b)(2).) Peake's amended complaint asserted a breach of contract claim against the Underwoods. By virtue of her voluntary dismissal of that claim, section 1717, subdivision (b)(2), prevented the trial court from finding a prevailing party on the contract. The Underwoods do not cite any evidence establishing that Peake was not entitled to dismiss her claims when she did—that is, either that trial had commenced or that the judge or arbitrator issued any rulings that would have substantively disposed of

Peake's claims.[7]  Therefore, Peake was entitled to voluntarily dismiss her claims against the Underwoods, which precluded a finding that the Underwoods were the prevailing party on the contract.  (§ 1717, subd. (b)(2).)

This section 1717 analysis, however, applies only to Peake's contract claim.  With respect to her tort claims, Peake's voluntary dismissal established the Underwoods were the prevailing parties *on those claims*.  (Code Civ. Proc., § 1032, subd. (a)(4).)  Thus, if the Purchase Agreement's attorney fees provision is sufficiently broad to include Peake's tort claims, the Underwoods are entitled to recover attorney fees incurred in defending against those claims.  (*Santisas, supra*, 17 Cal.4th at p. 617.)

The Purchase Agreement's attorney fees provision reads as follows:  "In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller. . . ."  Other courts—including our Supreme Court—have found similar provisions broad enough to include tort claims.  (*Santisas, supra*, 17 Cal.4th at p. 608 [a provision covering claims "arising out of the execution of the agreement or th[e] sale" is broad enough to "embrace[] all claims, both tort and breach of contract"]; *Drybread v. Chipain Chiropractic Corp*. (2007) 151 Cal.App.4th 1063, 1071-1072 [provision awarding attorney fees to the prevailing party in " 'any action or other

---

[7]    We deny respondents' request that we take judicial notice of the JAMS administrator's declaration.  The declaration was not before the trial court and Mr. Underwood has identified no exceptional circumstances justifying our consideration of it. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2.)

proceeding arising out of this Sublease' " is "broad enough to encompass noncontract claims"].)  So do we.  Accordingly, the Underwoods were entitled to prevailing party attorney fees incurred in defending against Peake's tort claims.

Although the trial court's order awarding fees to the Underwoods does not specifically rely on this analysis, it does cite *Santisas*.  Moreover, on appeal the Underwoods advanced the *Santisas* rationale in their briefs.  The *Santisas* rationale fully supports the trial court's ruling and we affirm on that basis.  (See *California Aviation, Inc. v. Leeds* (1991) 233 Cal.App.3d 724, 731 ["[T]he trial court's stated reasons for its ruling do not bind us.  We review the ruling, not its rationale."].)

Under *Santisas*, the Underwoods are entitled to recover attorney fees incurred defending Peake's tort claims, but not her contract claim.  While the trial court's ruling does not apportion fees between those claims, "fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed."  (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129-130.)  The court had before it the Underwoods' relevant legal bills, and could have reasonably concluded that Peake's contract and tort claims were "so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not."  (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1133.)  That determination is a matter of discretion for the trial court, which we will not disturb unless the court's ruling " ' " ' "exceeds the bounds of reason, all of the circumstances before it being considered." ' " ' "  (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582,

35

1604 [affirming trial court's award of fees, without allocation, where contract and misrepresentation claims arose from same operative facts].)  More important, Peake does not challenge the amount of the attorney fees award, or the lack of allocation between tort and contract claims.  The trial court did not abuse its discretion in awarding the Underwoods the full amount of their fee request without apportionment.

Finally, Peake contends the Underwoods failed to timely file their motion for attorney fees if one starts the clock on the date the court granted the Underwoods' motion to compel arbitration (i.e., the date on which the Underwoods claim they were deemed the prevailing party on the contract).  But it was not until Peake dismissed her claims against the Underwoods that the Underwoods became the prevailing parties.  Accordingly, we reject Peake's argument that the Underwoods' motion was untimely.

DISPOSITION

The judgment is affirmed.  Appellants to pay respondents' costs on appeal.

HALLER, J.

WE CONCUR:

McCONNELL, P.J.

McINTYRE, J.

36