Filed 8/4/16  Marriage of McSorley CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of ROBERT and LOURDES McSORLEY. | 2d Civil No. B265174 (Super. Ct. No. D349436) (Ventura County) |
| ROBERT A. McSORLEY, <br><br> Respondent, <br><br> v. <br><br> LOURDES McSORLEY, <br><br> Appellant; <br><br> ROBERT G. FOOTE, <br><br> Objector and Appellant. | |

Lourdes McSorley appeals an order denying her motion to set aside judgment on a marital settlement agreement (MSA) and for an award of support and fees inconsistent with the terms of the MSA.  (Fam. Code, § 2122.)[1]  Her attorney, Robert G. Foote, appeals an order imposing a $5,000 sanction against him for bringing the motion.  (Code Civ. Proc., § 128.7, subd. (b).)  We affirm.  We also impose sanctions in the

_____

[1] All statutory references are to the Family Code unless otherwise stated.

amount of $7,500 against Foote for prosecuting these frivolous appeals. (Code Civ. Proc., § 907; Cal. Rules of Court, rule 8.276(a) (hereafter rule 8.276(a)).)

BACKGROUND

Lourdes and Robert McSorley[2] married in November 2011. They separated two months later. Robert filed this dissolution action.

In June 2012, the parties executed a MSA. They were each represented by counsel. The MSA resolved all issues. The parties agreed there is no community property. They agreed Robert's two homes are his separate property, and Lourdes's 1.21-carat wedding ring and a $10,000 wedding gift from Robert are her separate property. They agreed Robert would pay spousal support to Lourdes for two years, totaling $12,000. They agreed he would pay her attorney $2,000 and would pay her moving expenses in the amount of $2,900. They also agreed marital rights would not be restored if they reconciled. They agreed any modification of the agreement, even after reconciliation, must be written. The court entered judgment on the MSA and ordered termination of marital status to be effective four months later.

Within two days of signing the MSA, the parties declared their love for each other in text messages. A year later, Lourdes moved back into Robert's home. Lourdes offered evidence that Robert continued to wear his wedding ring, referred to her as his wife, and gave her a card on their wedding anniversary.

Although they lived together, Robert continued paying spousal support as required by the MSA. The parties did not modify it, except to stipulate that marital status would terminate on a date to be determined by noticed motion or stipulation. The stipulation provided, "the Judgment entered on [the MSA] will remain in full force and effect, except as amended as to the marital status termination date, and that no marital rights or obligations shall arise in any event or under any circumstances by this amendment." They were each represented by attorneys who signed the stipulation.

_____

[2] For clarity we use the first names of the parties and intend no disrespect.

The parties performed the terms of the MSA. Robert paid $2,000 to Lourdes's attorney, gave her $2,900 in moving expenses, and paid $12,000 in spousal support.

About 10 months after Robert made his last support payment, the parties separated again. Robert gave Lourdes notice of termination of tenancy to evict her from his home. He also moved for an order terminating marital status.

Lourdes responded with a motion to set aside the judgment for fraud. She requested additional spousal support and attorney fees. She argued that Robert entered into the MSA with a hidden intent to reconcile and avoid the financial obligations of a husband. She declared she signed the MSA without reading it and she did not know she and Robert would reconcile. She declared she did not understand she would have no community property rights upon reconciliation until her new lawyer explained this when she and Robert separated the second time.

In response, Robert declared he had no secret intent to reconcile. When they executed the MSA, he believed the marriage had failed and would never be restored. He declared Lourdes asked him to sign papers to "void" the MSA but he refused. He offered text messages to demonstrate that Lourdes knew she had no marital rights after she began living with him again.

The parties agreed to continue the hearing on Robert's motion to terminate marital status, and to advance the hearing on Lourdes's motions, so all motions could be heard together. At that hearing, the trial court granted Robert's motion to terminate status and denied Lourdes's motions. She surrendered possession of Robert's home in exchange for dismissal of his unlawful detainer action.

Robert moved for $25,000 in sanctions against Lourdes and her attorney, Foote. (Code Civ. Proc., § 128.7, subd. (b).) The trial court granted Robert's motion in part, imposing sanctions only against Foote in the amount of $5,000. The trial court found the legal claims and contentions Foote asserted in the motion to set aside were without legal merit and there was no basis under existing law to assert them. It found that

3

any reconciliation was not legally significant because there was never a written agreement to modify the MSA.

DISCUSSION

*Motion to Set Aside Judgment and for Support*

We review the order denying the motion to set aside for abuse of discretion. (*In re Marriage of Brewer & Federici* (2001) 93 Cal.App.4th 1334, 1346.) Where, as here, appellant did not request a statement of decision we infer all findings of fact and law to support the judgment. (§ 2127; Code Civ. Proc., § 634.)

A motion to set aside a marital dissolution judgment under section 2122 may be based only on actual fraud, perjury, duress, mental incapacity, or mistake. Lourdes asserted fraud and mistake in the trial court.

Lourdes's motion was untimely to the extent it was based on mistake. A motion to set aside based on mistake must be brought "within one year after the date of entry of judgment." (§ 2122, subd. (e).) Lourdes brought her motion nearly three years after entry of judgment.

Lourdes's motion to set aside based on fraud lacked merit. A motion to set aside judgment based on fraud must be brought within one year of discovery and the moving party must demonstrate she "was kept in ignorance or in some other manner was fraudulently prevented from fully participating in the proceeding." (§ 2122, subd. (a).) The court may grant relief only if the fraud "materially affected the original outcome and . . . the moving party would materially benefit from the granting of the relief." (§ 2121, subd. (b).) Substantial evidence supported the trial court's implied finding that Lourdes was not "kept in ignorance or in some other manner . . . fraudulently prevented from fully participating in the proceeding" that led to the MSA. (§ 2122, subd. (a).) Whatever Robert's true feelings were about reconciliation before or after the parties signed the MSA, Lourdes was represented by counsel, fully participated at all stages of the proceedings, and was not ignorant of the fact that reconciliation would not restore her marital rights under the terms of the MSA.

4

Generally, reconciliation may extinguish a marital judgment upon clear and convincing evidence of intent to unconditionally reunite with "complete restoration of all marital rights," including property rights. (*In re Marriage of Modnick* (1983) 33 Cal.3d 897, 911-912 [mere cohabitation insufficient]; *In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 497 [clear indication of intent to annul agreement and restore earlier property rights required].) But Lourdes and Robert agreed reconciliation would not restore marital rights absent written modification. There was no evidence of written modification.

Lourdes and Robert agreed the MSA would "survive reconciliation or remarriage of the parties to each other." They agreed, "[u]ntil such time as the parties have entered into a written agreement signed by both parties modifying the terms of this Agreement, the acquisition of any assets, income, or liabilities by either party during any period of reconciliation or cohabitation, regardless of duration, shall be the separate property or liability of the party acquiring, accruing or incurring the same."

Their conduct was consistent with their agreement. Lourdes continued to accept the benefits of the MSA after the romance resumed, collecting spousal support for two years. In text messages shortly before the parties separated the second time, she expressed her understanding that she had no marital property rights:[3] "I appreciate you been honest enough to tell me you are leaving mr nothing for the future to rely on. Every time I see you I see my future[.] For now thanks . . . for letting me live in your house"; "You say u love me but words and love is not enough love doesnot pahy bills or secure future"; and "How can I feel loved and attracted to you when you don't give me my place as a wife. I feel with no rights only as I just live with u."

Lourdes relies on *People v. Howard* (1984) 36 Cal.3d 852, 858, however, she and Robert are unlike that defendant and his wife, whose unconditional reunion with mutual intent to restore all marital rights cancelled the child custody order upon which prosecution for child abduction was based. Robert and Lourdes agreed, "[a]ny

_____

[3] Spelling and grammatical errors in original.

5

reconciliation between the parties or cohabitation of the parties shall not cancel, terminate or modify the force or effect of any provision of this Agreement, unless the parties agree to the contrary in writing. Any periods of reconciliation, whether of short or long duration, shall not constitute any waiver of the terms of this Agreement or raise any estoppel to enforcement of the terms of this Agreement."

Lourdes contends the judgment should nevertheless be set aside because Robert was her fiduciary and had a duty to disclose his "desire and [intent] to make up with Lourdes," and his "secret intent not to actually reconcile." Her position is unsupported by the law. Spouses owe each other fiduciary duties in the management and control of community assets and liabilities until assets are divided. (§§ 1101, 2102.) But there is no evidence Robert withheld any information about assets, liabilities, or income, and there is no legal duty to accurately disclose feelings toward a spouse. (See *Askew v. Askew* (1994) 22 Cal.App.4th 942, 947, 957, 959.) Lourdes's authorities do not provide otherwise. (§ 721, subd. (b) [duty not to take unfair advantage of spouse in business transaction and to provide access to books, information, and accounting concerning the transaction]; Corp. Code, § 16403, subd. (c) [duty to furnish to business partner information concerning partnership's business and affairs]; Civ. Code, § 1572, subd. (3) ["[a]ctual fraud" includes suppression of truth by one with knowledge]; *Leff v. Gunter* (1983) 33 Cal.3d 508, 514 [business partner may not exploit partnership opportunity to personal benefit and detriment of partners]; *Shaub v. Shaub* (1945) 71 Cal.App.2d 467, 475 [concealment of illicit relations supported annulment for fraud under former Civil Code section 82]; *In re Marriage of Bonds* (2000) 24 Cal.4th 1 [presumption of undue influence did not apply to premarital agreement]; *In re Marriage of Pendleton & Fireman* (2000) 24 Cal.4th 39, 53-54 [public policy does not render premarital support waivers unenforceable per se]; *In re Marriage of Facter* (2013) 212 Cal.App.4th 967 [premarital waiver of spousal support unconscionable after 16-year marriage where husband was attorney, wife was unrepresented, and husband told wife she had no choice but to waive support].) The presumption of undue influence in unequal marital transactions does not

6

apply to a MSA in an action to set aside a judgment that is brought more than six months after entry of judgment. (*In re Marriage of Kieturakis* (2006) 138 Cal.App.4th 56, 90.)

Lourdes contends her need for support is great. But the court may not set aside a marital judgment because support is inadequate. (§ 2123.)

Lourdes relies on Civil Code section 1698, subdivision (c) to argue that the parties' conduct modified their agreement. That provision does not apply where, as here, "the contract otherwise expressly provides." (*Ibid.*)

Lourdes contends Robert should be estopped from relying on the MSA. But estoppel is not one of the exclusive statutory grounds for setting aside a judgment of dissolution. (§ 2122; *In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 684 [actual fraud, perjury, duress, mental incapacity, or mistake are exclusive grounds for relief under section 2122].) Also, the parties agreed reconciliation, "shall not . . . raise any estoppel to enforcement of the [MSA]."

Lourdes contends the MSA is unconscionable and therefore unenforceable under section 1612, subdivision (c). That statute applies only to "premarital agreement[s]." (*Ibid.*)

Lourdes forfeited her claim that she had insufficient time to conduct discovery when she agreed to advance the hearing on her motion. The record does not support her claim that counsel agreed to advance the hearing only under duress. And Lourdes demonstrates no prejudice. She was a party to the text messages she contends she needed time to review. And the outcome would be the same whether or not Robert referred to her as his wife in correspondence or tax returns before their marital status was terminated.

Lourdes's request for sanctions under section 271 against Robert for abuse of process in his separate unlawful detainer action, made for the first time on appeal, is not properly before us.

Lourdes's contention that the MSA did not address future spousal support contradicts its provisions that, "Wife hereby waives any right to spousal support, and releases Husband from any and all claims for spousal support or maintenance of any

7

kind, except for the amounts of fixed spousal support and additional support set forth herein. [¶] . . . [T]here shall be no reservation of jurisdiction by the court in the dissolution proceeding to award spousal support except as set forth above"; and "Each party having been fully informed of the above, does knowingly and willingly relinquish jurisdiction by the court in the dissolution proceeding to award spousal support except as set forth above. [¶] . . . Husband and Wife have carefully bargained in this agreement concerning all issues relating to support, including the amount of spousal support, its duration, and whether or not it should be extendible. The termination date concerning spousal support specified in this Agreement is absolute. As of that date, this Agreement cuts off forever the right of Wife to ask for support payments . . . Husband and Wife had been advised and understand that this clause may work great and unexpected hardship on one or both parties, and the parties have considered that possibility in electing to fix a specific date after which there will remain no spousal support obligation."

Lourdes's contention that "[a] future relationship is not considered and cannot be considered," in the MSA disregards the MSA's express reconciliation provisions.

We do not address Lourdes's contention that the judgment should be set aside pursuant to Code of Civil Procedure section 473, subdivision (b) because she did not assert that ground in the trial court and she brought her motion more than six months after entry of judgment.

*Motion for Attorney Fees*

When a party requests attorney fees under section 2030, the trial court weighs the relative circumstances to determine whether an award is necessary to maintain or defend the proceeding. (§ 2030, subd. (a)(1) & (2).) We will not disturb its determination absent a clear abuse of discretion. (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768-769.) Nowhere in her brief does Lourdes articulate why, considering all the evidence viewed most favorably in support of the order, no reasonable judge could have denied her request. (*Ibid.*)

8

*Sanctions in the Trial Court*

The trial court did not abuse its discretion when it awarded sanctions against attorney Foote.

A party has a statutory right to move to set aside a judgment and to request spousal support or attorney fees, but only on nonfrivolous grounds. (Code Civ. Proc., § 128.7, subd. (b).) Where, as here, the moving party complies with the notice provisions of section 128.7 of the Code of Civil Procedure, the trial court has broad discretion to impose sanctions upon an attorney who presents a motion that is not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. (*Id.*, subd. (c); *Peake v. Underwood* (2014) 227 Cal.App.4th 428, 441.) "[A]ny reasonable attorney would agree" that Foote's request to set aside the MSA because Robert concealed his true intentions about reconciliation was "totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)

*Sanctions on Appeal*

By noticed motion, Robert requests $44,744 in sanctions against Foote for prosecuting frivolous appeals on behalf of Lourdes and himself. (Civ. Code, § 907; rule 8.276(a).) We use the powers to sanction "most sparingly," but any reasonable attorney would agree that these appeals are totally and completely without merit. (*In re Marriage of Flaherty*, *supra*, 31 Cal.3d at pp. 650-651.) A sanction in the amount of $7,500 is sufficient to discourage like conduct in the future. (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 29.)

9

DISPOSITION

The orders are affirmed.  Appellants Lourdes McSorley and Robert G. Foote shall pay respondent Robert McSorley's costs on appeal.  In addition, Foote shall pay $7,500 to Robert McSorley within 30 days after remittitur as sanctions for bringing these frivolous appeals.  (Code Civ. Proc., § 907; Cal. Rules of Court, rule 8.276(a).)  The clerk shall send a copy of this opinion to the California State Bar.  (Bus. & Prof. Code, § 6086.7, subd. (a)(3).)

NOT TO BE PUBLISHED.


TANGEMAN, J.

We concur:


GILBERT, P. J.


YEGAN, J.

10

Manuel J. Covarrubias, Judge

Superior Court County of Ventura

_____

Robert G. Foote, in pro. per.; Robert G. Foote, for Appellants.

Law Office of Herb Fox and Herb Fox, for Respondent.