Filed 6/15/22  P. v. Zorns CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B308967 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA003868) |
| v. | |
| RICHARD LOUIS ZORNS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, David W. Stuart, Judge.  Affirmed.

John Lanahan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Daniel C. Chang and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Richard Louis Zorns appeals from the denial of his petition for vacatur and resentencing pursuant to Penal Code section 1170.95 entered after an evidentiary hearing held under subdivision (d) of that statute.[1]  He contends that the trial court erroneously applied a substantial evidence standard to find that defendant was guilty of murder under the 2018 amendments to sections 188 and 189, rather than requiring proof beyond a reasonable doubt.  We disagree.

Defendant also contends that the trial court's order should be reversed due to ineffective assistance by appointed counsel in the trial court.  Finding insufficient evidence to support this claim, we reject it and affirm the order.

## BACKGROUND

**1992 conviction**

In 1992 defendant was convicted of first degree murder and second degree robbery.  He was sentenced to 25 years to life plus seven years.[2]  The judgment was affirmed on appeal in *People v. Zorns* (Mar. 31, 1993, B066434) (nonpub. opn.) (*Zorns I*).

**Factual summary in appellate opinion**[3]

"On July 3, 1990, Judy Adams, assistant manager of the San Fernando swap meet, packaged the daily receipts and took the money bags to the car of Barney Pipkin, the manager.  Two

---

[1]     All further statutory references are to the Penal Code, unless otherwise indicated.

[2]     Defendant was released on parole prior to the hearing on his section 1170.95 petition.

[3]     We quote the factual summary in full, as the trial court relied significantly on the summary in ruling on defendant's section 1170.95 petition.

2

other swap meet employees were assisting in loading the car. Ricardo Roldan ran up to Pipkin with a gun and said 'Don't f*****g move.' As Roldan aimed the gun at Adams, it made a clicking noise. Pipkin, who had a hearing disability, continued to put the bags in the trunk. Sergio Ayala then approached the car, grabbed the money bags, and ran towards the swap meet exit. Pipkin ran after Ayala, and Roldan followed. Ayala ran to a white Firebird driven by appellant. Meanwhile, Adams phoned the police. Juan Jimenez, a security guard, chased after Ayala. Jimenez yelled to Roland Teal, another security guard, to help him. Teal followed Ayala in his van, and Jimenez followed in the car of one of the vendors.

"Teal stopped the getaway car, got out of his van, and began struggling with Ayala. Pipkin, Jimenez, and Teal's stepson then arrived at the scene and assisted in subduing Ayala. Roldan, holding a gun, shouted at them to let Ayala go or he would shoot. Jimenez pushed Ayala toward the gunman and heard a burst of gunshots. Everyone scattered. The gunman ordered Ayala to pick up the money, and they drove off in the getaway car.

"As the robbers drove away, Pipkin called the police from his car phone and gave them the license plate number of the getaway car. Returning to the scene of the crime, he saw Teal on his knees in the street. Teal died as a result of a gunshot that pierced his lungs and heart.

"Jimenez identified appellant in court as the driver of the getaway car. He testified that he was five feet away from appellant as appellant was driving the getaway car out of the swap meet. He also identified Roldan from a photographic lineup.

3

"Ericka Catalan, who lived near the location where the shooting took place, testified that she saw Ayala and Teal struggling over bags. She heard gunshots and saw Ayala and a second man, who had a gun, run to a car. In court she identified appellant as the driver of the car. During a police interview, Catalan described the driver of the car as having curly black hair, and that he yelled at the men in Spanish to 'get into the car.' At a photographic lineup, she identified Roldan.

"Christine Pedraza, appellant's wife, owned a white Firebird with license plates matching those reported to the police as belonging to the getaway car. She testified at trial under a grant of immunity. She overheard appellant making plans to 'do something,' and noticed that he was trying to hide something from her. On June 3, 1990, appellant took her car. Later, he called her, sounding 'hyper,' and saying that 'he did it.' He told her to call the police to report that her car had been stolen. She then heard Ayala say that no one got a license plate number. Appellant told Pedraza not to worry, and not to report the car as stolen. When she went to pick up appellant, she saw him with Ayala, Roldan, and two other men, Mendez and Carlos. A pouch containing money was on the couch next to Ayala. She also saw a briefcase and a brown paper bag, both containing money. Back at her house, she later saw appellant take money out of a brown paper bag, and count out $4000.

"Roldan's former girlfriend, Jude Barrios, testified under a grant of immunity at the preliminary hearing and at trial that she became aware that Roldan was planning to rob the San Fernando swap meet about a year before the incident. A month prior to the robbery, at the house she and Roldan shared, she heard Roldan discuss robbing the swap meet with appellant. The

day before the robbery, she heard Roldan tell appellant and Ayala that they could 'do it' the next day.

"The next evening, Barrios picked up Roldan at appellant's house. The day after the robbery, Barrios heard Roldan, Ayala, and appellant discussing the robbery. Roldan said he heard Ayala tell the security guard holding him to let him go or his homeboy would kill him."

**Section 1170.95 petition**

In 2018, the Legislature amended sections 188 and 189, limiting the scope of the felony-murder rule, effective January 1, 2019. The Legislature added section 1170.95, which provides a procedure for those convicted of murder to retroactively seek relief if they could not be convicted under sections 188 and 189 as amended effective January 1, 2019. (Stats. 2018, ch. 1015; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)[4]

In January 2019 defendant filed a petition pursuant to section 1170.95, including a declaration alleging that he had been

---

[4] Section 188, subdivision (a)(3) now provides: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." Section 189, subdivision (e) now provides: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

charged in an information that allowed the prosecution to proceed under a theory of felony murder, and though he was convicted of first degree murder, he could not now be convicted due to the changes to sections 188 and 189. Counsel appeared for defendant and both sides submitted briefs. On October 20, 2020, the trial court called the matter for an evidentiary hearing on the "major participant issue," although the record does not reflect that the trial court issued an order to show cause.

At the evidentiary hearing the parties submitted the issue on the facts summarized in *Zorns I, supra*, B066434. In addition, the prosecutor asked the court to consider the testimony from defendant's 1992 trial reported at pages 1391 through 1393 of volume 10 of the reporter's transcript. Those pages featured the testimony of Barrios (Roldan's former girlfriend) to the effect that the day after the robbery she heard defendant, Roldan and Ayala laughing and joking about the robbery. She testified that defendant said he ran over some people and then laughed when Roldan told him he was crazy.[5] She also testified that defendant said he did not drive too close to the scene because he did not want to draw suspicion to the car or be recognized.

The trial court reviewed the facts as summarized in the appellate opinion and those presented by the prosecutor before denying the petition. The court based its findings on an analysis of factors suggested in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), finding that defendant was a major participant in the robbery, having been part of the planning for at least a month, and acted with

---

[5] The reporter's transcripts of the 1992 trial do not show any evidence that defendant ran over anyone. Indeed, the prosecutor conceded in his closing argument that it did not happen.

6

reckless indifference to human life with "indifference to an actual awareness of the grave risk of death by committing robbery," and was thus guilty of murder under the current felony-murder rule set forth in section 189. (See § 189, subd. (e)(3).)

Defendant filed a timely notice of appeal from the order denying his petition.

## DISCUSSION

### I. The trial court proceedings

#### A. *Standard of proof*

Defendant contends that the trial court erroneously based its findings upon a substantial evidence review, using the wrong standard of proof in concluding that he was a major participant in the underlying robbery and acted with reckless indifference to human life.[6] Defendant argues that the error was prejudicial as there is a reasonable probability that if the court had applied a reasonable doubt standard, his petition would have been granted.

At the time the trial court ruled on defendant's petition, section 1170.95, former subdivision (d)(3) provided that at the evidentiary hearing stage of proceedings, "the burden of proof

---

[6] Defendant argues that the trial court used the standard of review set forth in *People v. Duke* (Sept. 28, 2020, B300430), review granted, cause transferred and opinion ordered nonpublished Nov. 23, 2021, S265309. Although *Duke* described what was essentially the substantial evidence standard, defendant describes the standard used by the trial court alternatively as substantial evidence and as "the 'some evidence' standard." The "some evidence" standard of review requires only a modicum of evidence. (*In re Shaputis* (2011) 53 Cal.4th 192, 209-210.) Defendant's use of the term does not affect our analysis.

7

shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (See *Lewis, supra*, 11 Cal.5th at p. 960.) The Legislature recently amended section 1170.95 and added language to subdivision (d)(3) to reaffirm the prosecutor's burden of proof beyond a reasonable doubt, adding: "A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (Stats. 2021, ch. 551, § 2; see *id.*, § 1(c).)[7]

At the evidentiary hearing the prosecutor advocated a substantial evidence review, while defense counsel argued that the prosecution's standard of proof was beyond a reasonable doubt. The trial court's statement of findings and ruling does not include the standard it applied. The People argue that the court impliedly applied a reasonable doubt standard because it acted as an "independent factfinder."[8] The judge in this proceeding was

---

[7] Section 1170.95, subdivision (d) also now includes: "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. . . . The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. . . ."

[8] The People seemingly come to this conclusion by analyzing the following appellate court cases, which are no longer citable, by order of the California Supreme Court: *People v. Clements* (Feb. 2, 2021, E073965), review granted, cause transferred and

8

not the trial judge, and the court's comments regarding the parties' citations to the appellate opinion suggest that the court had not reviewed the reporter's trial transcripts, but instead reviewed the facts summarized in *Zorns I* and those recited by the prosecutor at the hearing.[9]  The appeal in *Zorns I* did not address any claim or factors relating to whether defendant was a major participant in the robbery or whether he acted with reckless indifference to human life.  At the section 1170.95, subdivision (d) hearing, the prosecutor did not proffer any new evidence or cite to the trial transcripts other than the testimony relating to defendant's joke about having run someone over at the scene.  The record need not affirmatively demonstrate the trial court's application of the correct legal standard; instead, we presume the court applied the correct standard unless there is evidence to the contrary.  (Evid. Code, § 664; *Peake v. Underwood* (2014) 227 Cal.App.4th 428, 447; *People v. Mack* (1986) 178

---

opinion ordered nonpublished Dec. 22, 2021, S267624; *People v. Rodriguez* (Dec. 7, 2020, B303099), review granted, cause transferred and opinion ordered nonpublished Dec. 22, 2021, S266652; *People v. Lopez* (Oct. 30, 2020, H047254), review granted, cause transferred and opinion ordered nonpublished Dec. 22, 2021, S265974; *People v. Duke, supra*, B300430, review granted, cause transferred and opinion ordered nonpublished.

[9]     Originally, there were 17 volumes of reporter's transcripts, which are no longer available in this court's archives.  The People filed 16 of the transcripts but were unable to locate volume 7.  We granted the People's request for judicial notice of its brief in defendant's appeal from the 1992 judgment.  The People also refer here to the brief's summary of the testimony reported in the missing transcript.  We have reviewed some of the record available.

Cal.App.3d 1026, 1032.) We decline defendant's invitation to do otherwise.

## B. *The* Banks *and* Clark *factors*

The reckless indifference requirement was first articulated in *Tison v. Arizona* (1987) 481 U.S. 137 and *Enmund v. Florida* (1982) 458 U.S. 782 in relation to the imposition of the death penalty. In *Banks*, decided after defendant was convicted of felony murder, the California Supreme Court applied the analysis to felony-murder special-circumstance requirements under section 190.2. (*Banks, supra*, 61 Cal.4th at p. 794.) As amended, section 189, subdivision (e)(3), incorporates the same requirement into the felony-murder statute. Thus, to convict a defendant who was not the actual killer of felony murder, the prosecution is required to prove beyond a reasonable doubt that the defendant acted with reckless indifference to human life as a major participant in one of the enumerated serious felonies underlying felony murder.

The factors for determining whether the defendant acted with reckless indifference to human life as a major participant were further clarified when the California Supreme Court explained that a finding of reckless indifference to human life "'requires the defendant be "*subjectively* aware that his or her participation in the felony involved a grave risk of death."'" (*Banks, supra*, 61 Cal.4th at p. 807.) Thus it must be proven beyond a reasonable doubt that the defendant "*knew* his *own* actions would involve a grave risk of death." (*Ibid.*, italics added.)

Our high court has explained a spectrum of culpability, a continuum with Enmund's conduct at one end and the Tison brothers' conduct at the other, with other nonkiller felony

10

murderers falling in between; thus at one end is "'the minor actor in an armed robbery, not on the scene, who neither intended to kill nor was found to have had any culpable mental state.'" (*Banks, supra*, 61 Cal.4th at p. 800.)  At the other end are the "actual killers and those who attempted or intended to kill." (*Ibid.*; see *id.* at pp. 800-802.)  "Somewhere between them, at conduct less egregious than the Tisons' but more culpable than . . . Enmund's, lies the constitutional minimum" showing required for the imposition of death or life without the possibility of parole.  (*Id.* at p. 802.)

Thus "any person who plans or participates in an armed robbery can be said to anticipate that lethal violence might be used, given that 'roughly 1 in 200 [armed robberies] results in death.' [Citation.]  But that fact, without more, does not establish reckless indifference to human life." (*In re Scoggins* (2020) 9 Cal.5th 667, 682 (*Scoggins*), quoting *Banks, supra*, 61 Cal.4th at p. 811.)  Our Supreme Court has identified a number of considerations bearing on whether a defendant was a major participant who acted with reckless indifference to human life. (*Banks, supra*, at p. 803.)  What matters is the totality of the considerations.  (*Scoggins, supra*, at p. 677.)

The factors used to determine whether the defendant was a major participant include the role played by the defendant in planning the criminal enterprise that led to death; the role defendant had in supplying or using a lethal weapon; the awareness of the defendant of the particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants; the defendant's presence at the scene of the killing; and the defendant's action after lethal force was used.  (*Banks, supra*, 61 Cal.4th at p. 803; see *Clark, supra*,

11

63 Cal.4th at p. 611; see also *Scoggins, supra*, 9 Cal.5th at p. 677.)

C. ***The trial court's findings***

The trial court found defendant's actions to be more extensive than those of a *Banks*-like getaway driver. It cited two of the *Banks* factors and found them sufficient to support its finding that defendant acted with reckless indifference to human life: planning; and presence at the scene of the killing and no effort to prevent the killing. (See *Scoggins, supra*, 9 Cal.5th at p. 677; *Banks, supra*, 61 Cal.4th at p. 803.)

**1.** *Planning*

The trial court found that defendant was involved in planning for "at least a month." The appellate opinion and the record support this finding, indicating that defendant learned of Roldan's plan one month before the robbery. The opinion recited Barrios's testimony that a month before the robbery she heard Roldan discussing robbing the swap meet, which he had been planning for a year. (*Zorns I, supra*, B066434.)

The prosecution asserts that the trial court's finding is supported by trial evidence, citing specific pages in the record.[10] Our review of the testimony at or near the cited pages shows that Barrios testified she did not know exactly when she first overheard Roldan discussing his plans for the robbery with defendant, that it was "a month give or take" before the robbery, and that she overheard no more discussions with defendant about

---

[10] The prosecution cites the reporter's transcript, volume 6 at pages 957 and 962, and volume 10 at pages 1356, 1357, 1358, and 1361. As page 1361 was limited to the codefendants and not to be considered against defendant, we do not consider whether it supports the prosecution's contention.

the robbery until just before it occurred when Roldan said they "would do it tomorrow." Though defendant and Ayala did not verbally respond, they shrugged their shoulders and nodded their heads. The robbery occurred the next day. Pedraza testified that she overheard defendant and some friends planning to "do the swap meet."

**2.** *Presence at the scene*

The trial court found that defendant was present at the scene of the killing and also that the shooting "happened presumably right in front of [defendant], who at that point had the ability to prevent the killings [*sic*] from happening." The court observed: "There is obviously a short car chase from the scene of the robbery to where it ended. [I]t's unclear exactly how long that car chase lasted, but his car had to be stopped by the security guards and another witness or security guard or swap meet participant and that's when the shooting happened . . . . There was a struggle over the money and at that point [defendant] could have stopped his accomplice from insisting on taking the money. But he didn't, and the shot was fired, and the defendant drove the shooter away."

There was a short chase, but defendant notes the getaway car was not stopped. It was parked at the exit gate when Ayala ran toward it with the money bags. Pipkin followed on foot behind Ayala a short distance before returning to his car. Jimenez testified that he chased Ayala on foot, and defendant then engaged in driving that blocked or shielded Ayala from security guard Jimenez. Eventually Ayala was able to get inside the white getaway car, which then left the scene. These facts support the trial court's conclusion that defendant was at the scene, actively involved to the extent he assisted in Ayala's

13

escape and had the opportunity to have prevented the shooting death of the victim.

**3.** *Awareness of dangers posed by the nature of the crime, weapons used, or past experience or conduct of confederates*

The trial court acknowledged that there was no evidence of past experience or conduct between defendant and Roldan or Ayala that would relate to defendant's knowledge of the particular danger, and we found none in the trial transcript. This however, does not mean defendant was not a major participant who acted with reckless indifference to human life.

**D.** *Analysis*

Because the trial court independently found defendant guilty of murder because defendant was a major participant who "did, in fact, act with reckless indifference to human life," it is our task to view the record to determine the existence of "substantial evidence—evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Hubbard* (2016) 63 Cal.4th 378, 392.)

**1.** *Major participant*

Substantial evidence supports finding that defendant was a major participant, even when applying the afore-described (part I.B.) *Banks* and *Clark* factors.

First, defendant engaged in planning the robbery by attending a meeting for that purpose a month or so before the heist and then discussing the night before "do[ing] the swap meet."

Second, at the scene, defendant actively used the getaway car to block or shield Ayala from the security guards who were trying to apprehend Ayala.

Finally, defendant was at the scene of the killing and did not intervene in any way to stop the shooting of the victim. Nor did defendant render any aid to the victim. Instead he fled the scene driving the vehicle containing Roldan and Ayala to a place of safety where they could count the stolen money.

**2.** *Reckless indifference to human life*

This standard "has a subjective and an objective element." (*In re Scoggins, supra*, 9 Cal.5th at p. 677.) To satisfy the subjective component, "'[t]he defendant must be aware of and willingly involved in the violent manner in which the [underlying felony] is committed,' and . . . must consciously disregard 'the significant risk of death his or her actions create.'" (*Ibid.*, quoting *Banks* at p. 801.) The key is whether the defendant demonstrates "a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark, supra*, 63 Cal.4th at p. 617.)

Our Supreme Court has identified various considerations bearing on whether a defendant has acted with reckless indifference to human life. "No one of these considerations is necessary, nor is any one of them necessarily sufficient" (*Banks, supra*, 61 Cal.4th at p. 803); what matters is the totality of the considerations (*Scoggins, supra*, 9 Cal.5th at p. 677). The considerations are: (1) "Did the defendant use or know that a gun would be used during the [underlying] felony," and, "[h]ow many weapons were ultimately used?"; (2) "Was the defendant physically present at the crime," such that he had "the

15

opportunity to restrain the crime or aid the victim?"; (3) "What was the duration of the interaction between the perpetrators . . . and the victims?"; (4) "What was the defendant's knowledge of his . . . confederate's propensity for violence or likelihood of using lethal force?"; and (5) "What efforts did the defendant make to minimize the risks of violence during the felony?" (*Ibid.*, citing *Clark, supra*, 63 Cal.4th at pp. 618-623.)

Substantial evidence supports the finding that defendant acted with reckless indifference to human life, when applying this standard. First, although defendant did not personally use the gun, he must have known Roldan was armed with a gun since they came together to the scene in the car driven by defendant. Second, defendant was present during the shooting and did not try to stop or dissuade Roldan from shooting. Third, the entire incident happened quickly. Finally the record shows no effort by defendant to minimize the risk of violence.

### E. *Conclusion*

We conclude that there is substantial evidence upon which an independent fact finder reviewing the record considered by the original trial court could conclude that the prosecutor had proved beyond a reasonable doubt that defendant is guilty of murder under the current sections 188 and 189. We thus affirm the order.

## II. Assistance of counsel

### A. *Applicable legal principles*

The Sixth Amendment right to counsel does not apply to postjudgment collateral challenges, including statutory petitions seeking a more ameliorative sentence. (*People v. Frazier* (2020) 55 Cal.App.5th 858, 865-866.)

16

Section 1170.95, which established a procedure for defendants to seek resentencing in the trial court, constituted an act of lenity that does not implicate a petitioner's Sixth Amendment rights. (*People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156; see *People v. Daniel* (2020) 57 Cal.App.5th 666, 675.)

Consistent with these principles, our Supreme Court in *Lewis* reasoned that a petitioner is not constitutionally entitled to counsel at the outset of the subdivision (c) stage of the petitioning process, concluding that "the trial court's failure to appoint counsel to represent [the petitioner] was state law error only." (*Lewis, supra*, 11 Cal.5th at p. 973.) And in holding that the trial court's error is reviewed for prejudice under *People v. Watson* (1956) 46 Cal.2d 818, 836, *Lewis* explained the state statutory error did not amount to structural error or a pervasive Sixth Amendment violation. (*Lewis, supra*, at pp. 973-974.)

Although defendant had no Sixth Amendment right to counsel, he did have a statutory right to assistance of counsel. "If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1170.95, former subd. (c).)

The law is undeveloped as to whether a statutory right to the appointment of counsel in a collateral criminal resentencing action triggers an attendant due process right to the effective assistance of counsel. (See *People v. Rouse* (2016) 245 Cal.App.4th 292, 300 [noting right to counsel without discussing effective assistance of counsel].) Since the entitlement to counsel after an order to show cause under section 1170.95 is not a hollow right, counsel should be held to the same standard of competency set forth in *Strickland v. Washington* (1984) 466 U.S. 668 (*Strickland*). Based on that assumption we nevertheless find that defendant has failed to demonstrate entitlement to relief.

17

In order to establish a claim of ineffective assistance of counsel under *Strickland*, defendant must show that his counsel's performance was deficient and that he suffered prejudice as a result of such deficiency. (*Strickland, supra*, 466 U.S. at pp. 687-692.) Defendant bears the burden of showing counsel's performance "fell below an objective standard of reasonableness" "under prevailing professional norms." (*Id*. at p. 688.) "Judicial scrutiny of counsel's performance must be highly deferential." (*Id*. at p. 689.) There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (*Id*. at p. 690.) Defendant must also show that counsel's deficiencies resulted in prejudice, that is, a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (*Id*. at p. 694.)

### B. *Counsel's representation was adequate*

#### 1. *Within objective standard of reasonableness*

Defendant contends his counsel failed to point out certain "[f]actual errors in the decision of the Court of Appeal" from 1993. (Boldface omitted.) Specifically he claims a discrepancy between the trial court's statement that "Teal followed the getaway car and stopped it" and testimony given by Pipkin and Jimenez. However, defendant fails to make the required showing that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that, but for the alleged error, the results of the section 1170.95 proceeding would have been different. Rather, the superior court applied an independent fact finder standard of review and presumably found beyond a reasonable doubt that, because defendant was a major participant who acted with reckless indifference to human life, he

18

was ineligible for resentencing. To the extent the trial court relied on the challenged statement in this court's decision, it was an appropriate finding under section 1170.95, former subdivision (d)(3). The findings are also supported by the trial transcript of witnesses' testimony. Though details between the appellate opinion and the trial transcript may not be identical, both contain information that defendant was not only a driver who waited off-site for his confederates to steal money and then come to him for a ride. Rather the evidence shows defendant was close at hand and when Ayala was running toward the white car, defendant used the car (traveling both forward and in reverse) to gain a position of advantage for Ayala. Defendant was described as using the white car as a shield for the escaping Ayala.

Defendant also contends that his defense counsel's reliance on *Banks* and *Clark* was misplaced because unlike many or most cases in which a petition for relief under section 1170.95 has been filed by an accomplice to felony murder, there was no prior finding of a section 190.2 special circumstance that would preclude defendant from relief. This argument lacks merit because at defendant's evidentiary hearing, the court determined whether defendant was liable for murder under current law beyond a reasonable doubt, and each side had the opportunity to offer "new or additional evidence" concerning that issue.

Defendant also claims his counsel failed to review or refer to the transcript of his trial. Defendant relies extensively on evidence that he believes would have more convincingly rebutted the prosecution. However, as *Strickland* explained, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved

unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation.] . . . [Citation.] There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (*Strickland, supra*, 466 U.S. at p. 689; see *People v. Holt* (1997) 15 Cal.4th 619, 704.) Defendant's claims amount to little more than alternatives, with hindsight and awareness of the failure of trial counsel's tactics, which might have offered a stronger defense.

Defendant's remaining claims concerning his participation in the crimes and his reckless indifference to human life are an attempt to reargue the evidence, an exercise in which we will not participate.

Defendant has thus failed to meet his burden of demonstrating his counsel's performance "fell below an objective standard of reasonableness" "under prevailing professional norms." (*Strickland, supra*, 466 U.S. at p. 688.)

**2.** *Defendant fails to demonstrate prejudice*

Even assuming that counsel provided deficient representation by failing to provide specific record citations for the evidence he raised in support of his argument, defendant has not shown a reasonable probability of a different result but for his counsel's alleged deficiencies. The evidence contained in the record before the trial court showed that defendant was a major participant who acted with reckless indifference to human life. Counsel's citations to specific pages in the transcript would not have changed the record, and therefore not the result. (See *People v Harpool* (1984) 155 Cal.App.3d 877, 886-887 [defendant was not deprived of effective assistance of counsel as the result of counsel's failure to move to suppress in-court identification

20

testimony of witness where trial court attributed little value to that witness's testimony, and both the direct and circumstantial evidence presented at trial overwhelmingly favored defendant's guilt].)

## DISPOSITION

The order denying the section 1170.95 petition is affirmed.

_____
CHAVEZ, J.

We concur:

_____
ASHMANN-GERST, Acting P. J.

_____
HOFFSTADT, J.