Filed 9/1/22  P. v. Rose CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B316112 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A632072) |
| v. | |
| LIONELL ROSE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Allen J. Webster, Jr., Judge.  Affirmed.

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Roberta L. Davis and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

After discussing a plan to kill Teddy Johnson, appellant Lionell Rose drove himself and Vantrae Gregory, who was armed with a handgun, to a location where they expected to find Johnson.  Gregory shot the man they saw at the location.  They later discovered the man that Gregory had shot was not Johnson, but Ben Allen Hill.  Upon learning this, Rose suggested, "Let's go back and get him."

In 1986, a Los Angeles County jury convicted Rose of first degree murder with a true finding that a principal was armed with a firearm.  (Pen. Code,[1] §§ 187, 12022, subd. (a).)  He was sentenced to 26 years to life in state prison.  The conviction was affirmed by this court on February 26, 1987.  (*People v. Rose* (Feb. 26, 1987, B020560) [nonpub. opn.].)

On December 30, 2020, Rose filed a petition for resentencing pursuant to section 1172.6,[2] urging he was entitled to relief because he was not the actual killer and the jury was instructed on a theory of natural and probable consequences.  On October 29, 2021, following an evidentiary hearing, the trial court denied Rose's petition on the grounds that Rose could still be convicted of murder under a currently valid legal theory because he aided and abetted the killing with the express intent to kill and was a major participant who acted with reckless indifference

---

[1] Unless indicated all statutory references are to the Penal Code.

[2] Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text.  (Stats. 2022, ch. 58, § 10.) The parties refer to section 1170.95 in their papers, but in this opinion, we refer to it under its current designation for the sake of consistency.

2

to human life as set forth in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522.

On appeal, Rose argues the trial court failed to act as an independent factfinder and apply the correct beyond a reasonable doubt standard.[3]  We conclude Rose has not demonstrated the court applied the wrong standard, and, thus, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Summary

The record on appeal does not include the reporter's transcript or the clerk's transcript from Rose's original trial, although it appears Rose provided these transcripts to the resentencing court, which referred to them during the evidentiary hearing.  On appeal, Rose's counsel states he "has no briefing or other documents related to [Rose's direct] appeal beyond what is provided in the current record on appeal."  Thus, Rose relies upon the factual summary provided in our recent unpublished opinion relating to Gregory's resentencing appeal.  (*People v. Gregory* (Jan. 4, 2022, B310573) [nonpub. opn.].)  In the trial court, Rose

---

[3] In his opening brief, Rose also argues that the trial court engaged in improper factfinding during the prima facie stage and failed to hold an evidentiary hearing.  However, the record demonstrates that on July 23, 2021, the People conceded Rose made a prima facie showing, and an order to show cause hearing was scheduled.  In his reply brief, Rose also acknowledges, "[h]ere, the trial court determined the prima facie showing was made and issued an [order to show cause], then conducted a hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts.  ([Fmr.] § 1170.95, subds. (c), (d) . . . .)"  Thus, we conclude Rose's argument lacks merit.

also derived facts from this court's prior opinion on direct appeal for his statement of facts. (*People v. Rose*, *supra*, B020560.) We recognize that we may not rely on prior appellate opinions for non-procedural facts. (§ 1172.6, subd. (d)(3).) Thus, we recite facts from these two prior opinions for the purpose of context, only, and where necessary for our opinion, rely upon the facts stated in Rose's briefs submitted to the trial court in support of his resentencing petition as well as the facts stated by the trial court and parties at the section 1172.6 evidentiary hearing.

On April 2, 1985, Gregory attended a party where he engaged in a fistfight with Johnson. Gregory suggested that he and Johnson step outside and brandished a handgun. Gregory did not fire it, but Johnson left promising to return. Johnson returned approximately two hours later, and "shot up" the house where the party was taking place. Gregory stated he was "going to get" Johnson. (*People v. Gregory*, *supra*, B310573.)

At approximately 6:00 p.m. on April 11, 1985, Pamela Hillman, who attended the party with Rose, heard Gregory and Rose planning Johnson's murder. She observed Rose and Gregory drive off in Rose's car after Gregory armed himself with a .38 caliber handgun and announced they "were going to take care of [Johnson]." Gregory and Rose then returned at approximately 8:00 p.m., and told Hillman, "It was done. We took care of [Johnson]." (*People v. Rose*, *supra*, B020560; see *People v. Gregory*, *supra*, B310573.)

A few days later, Gregory disclosed, in Hillman's and Rose's presence, that he had killed the wrong person, Hill. In response, Rose suggested, "Let's go back and get him." (*People v. Rose*, *supra*, B020560; see *People v. Gregory*, *supra*, B310573.)

4

In his 1172.6 petition, Rose recites the following facts: In April 1985, Gregory and Johnson got in a fist fight. On April 11, 1985, Hill was found dead from two gunshot wounds. That same night, Gregory and Rose left their residence and traveled to the location where Hill was discovered dead. When they returned home, Rose told Hillman, "It was done." However, at trial, Rose presented a defense that he was in Bakersfield at the time of the crime. Rose also claimed that there was no evidence at trial that Rose "entered the residence containing Mr. Hill . . . the only evidence produced at trial indicated that [Rose] merely drove the vehicle to the location." Rose had no intent to kill Hill. "When it was discovered the wrong person was killed [Rose] allegedly indicated, 'let's go back and get him.' " In his supplemental brief in support of the petition, Rose notes that at the time of trial, the prosecutor "argued . . . that [Rose] was a lookout."

At the evidentiary hearing, the People pointed to the trial testimony of Jeffrey Sanders, a county jail inmate. According to Sanders, Gregory told him that both Gregory and Rose peeked through a door window at the location where they expected to find Johnson and went into the house.

## B.    Procedural Summary

### 1.    *Relevant Chronology Prior to the Evidentiary Hearing*

Rose was convicted of premeditated and deliberate murder during which a principal was armed with a firearm. (§§ 187, 12022, subd. (a).) He was sentenced to a total of 26 years to life in state prison. The conviction was affirmed by this court on February 26, 1987. (*People v. Rose*, *supra*, B020560.)

On December 30, 2020, Rose filed a section 1172.6 petition for resentencing in which he alleged he was entitled to relief because he was not the actual killer and the jury was instructed

on a theory of natural and probable consequences. He declared he was charged with and convicted of first degree murder under the natural and probable consequences doctrine or under a felony murder theory and, pursuant to changes made to sections 188 and 189, he could not now be convicted of murder.

The People filed a response to the petition, arguing Rose was not prosecuted under a theory of felony murder or murder under the natural and probable consequences doctrine. The People attached this court's prior appellate decision and the jury instructions from the trial to their response.

Rose's appointed counsel then filed a response to the People's brief. Rose argued a prima facie case had been established because the jury had been instructed on the natural and probable consequence theory and cited to CALJIC No. 3.00, which defined "principals," in the trial record. That instruction provided, inter alia, that "One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly and intentionally aided or encouraged." Rose also argued he was not the actual killer and had no intent to kill. Further, he asserted that the People would have to prove beyond a reasonable doubt that Rose could be convicted of murder under the current law at a final evidentiary hearing.

To his brief, Rose attached the verdict, minute order from his sentencing, the judgment, the jury instructions, and our opinion from his direct appeal, and indicated the reporter's transcript and clerk's transcript from the trial would be filed under separate cover. The jury instructions included, inter alia, instructions for murder, malice aforethought, deliberate and

6

premeditated murder, and the attempt to kill one person but killing another.

On July 23, 2021, the People conceded Rose had demonstrated a prima facie case, and the trial court issued an order to show cause why Rose should not be granted relief under section 1172.6.

The People filed a supplemental response arguing Rose was ineligible for resentencing because he aided and abetted with the intent to kill Johnson, and that intent transferred to Hill.

Rose filed a supplemental response. Citing at length to an appellate opinion evaluating the applicable standard of proof at the evidentiary hearing, Rose asserted the prosecution must prove he was guilty of murder beyond a reasonable doubt under current law and that the court must act as an independent factfinder in making that determination. Rose also argued his intent to kill Johnson, if any, could not transfer because it was not "concurrent" with the mistaken shooting of Hill and that he was not "inside the location of the killing." Thus, he urged his conviction must be vacated.

2.    *The Evidentiary Hearing*

On October 29, 2021, the court held an evidentiary hearing pursuant to section 1172.6, subdivision (d)(3). During the hearing the court stated it had read the briefs filed by the parties, the trial transcripts, and the opinion of the Court of Appeal.

The prosecution argued Rose was liable as an aider and abettor under the theory of transferred intent, even if the wrong person was killed.

Rose argued, "The first point that I would like to emphasize is this court now is to make a decision based upon whether or not [Rose] could be convicted under the current law as it exists."

Further, Rose argued he did not go into the residence and that although "[Rose] may have had intent to kill someone, . . . he's not responsible for every random mistaken killing [by] Mr. Gregory." "Rose did not have the intent to kill a mistaken victim."

The trial court asked Rose's counsel, "Why was [Rose] in the car to begin with?" Rose's counsel responded, "He was in the car to begin with to drive over to find Mr. Johnson." The court asked, "Why?" Rose's counsel responded, "To assist Mr. Gregory in the killing of Mr. Johnson." Rose's counsel further argued, "What I am attempting to convince this court of, is the fact that the law of transferred intent now requires a concurrent intent. Meaning to kill those people at that time." "In this case, Mr. Rose had no idea that . . . Mr. Gregory[ ] would walk into a home of an innocent victim, not identify the victim in any shape, form whatsoever as being . . . Johnson . . . . How would Mr. Rose ever imagine that he would go in and mistakenly shoot an unintended person."

Following the parties' extensive arguments, the trial court stated, "my responsibility is to provide an independent review, make a decision based upon what I read, what's presented, the transcript, et cetera." The court recited a number of facts relevant to its decision, including that Hillman heard Rose and Gregory plan Johnson's murder; that Rose drove off with Gregory after Gregory armed himself and announced they were going to kill Johnson; that they drove to a residence that Johnson frequented; and that after Rose discovered Gregory had shot the wrong man, Rose stated, "Let's go back and get him." Then, in September 1985, "an inmate in the crip module at the county jail[ ] engaged in a conversation with Gregory and [Rose] in

8

which Gregory admitted details of the shooting.  In the same conversation, [Rose] acknowledged he was present during the shooting."

Citing *Banks* and *Clark*, the trial court found Rose was a major participant.  The trial court also found Rose aided and abetted with the intent to kill:  "They went to this location with the express intent to kill somebody.  And the fact that they just killed the wrong person, it's really of no consequence because a murder occurred."  "He is responsible.  He is just not the shooter.  He didn't shoot the gun, but he's part and parcel of all of this.  He had a way to get out of it.  But he was there from start to finish.  He was there when they discovered that they shot the wrong person.  He was one of the people that said, 'Let's go get him.  Make sure next time we get the right person,' but it never happened."

The trial court denied the petition for resentencing.

On November 1, 2021, Rose filed a notice of appeal.

## DISCUSSION

### A.    Legal Principles

"Senate Bill [No.] 1437 [(2017-2018 Reg. Sess.)] 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.]"  (*People v. Gentile* (2020) 10 Cal.5th 830, 842.)  "[T]o amend the natural and probable consequences doctrine, the bill added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before a principal may be convicted of murder.  [Citations.]"

9

(*People v. Owens* (2022) 78 Cal.App.5th 1015, 1021.) "Senate Bill [No.] 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought." (*People v. Gentile*, *supra*, at p. 848; see *People v. Chiu* (2014) 59 Cal.4th 155, 166 [an aider and abettor may be convicted of premeditated murder as a direct aider and abettor of the murder, but not as an aider and abettor under the natural and probable consequences doctrine].)

Senate Bill No. 1437 also added what is now numbered as section 1172.6 to provide a mechanism whereby people "who believe they were convicted of murder for an act that no longer qualifies as murder following the crime's redefinition in 2019[ ] may seek vacatur of their murder conviction and resentencing by filing a petition in the trial court." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 973.)

Under section 1172.6, a petitioner first has to make a prima facie case for relief. (*Id.*, subd. (a).) Here, the People conceded Rose demonstrated a prima facie case. As the record reflects, the jury at trial was instructed Rose could be found guilty based on the concept of natural and probable consequences. Therefore, the proceedings before us focus on the final hearing envisioned by section 1172.6, subdivision (d).

At the section 1172.6, subdivision (d) evidentiary hearing, the trial court acts as an independent fact finder. (See *People v. Owens*, *supra*, 78 Cal.App.5th at p. 1022.) "[T]he burden of proof . . . shift[s] to the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*People v. Drayton*, *supra*, 47 Cal.App.5th at p. 981; see also § 1172.6, subd. (d)(1)-(3).) Effective January 1, 2022, the Legislature clarified "[a] finding that there is substantial evidence to support

10

a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (See § 1172.6, subd. (d)(3); Stats. 2021, ch. 551, § 2.)

## B.     Rose Has Not Shown that the Trial Court Erred

Rose challenges whether the trial court used the proper standard in deciding whether he was entitled to relief. He argues the trial court was to act as an independent factfinder, determining whether the prosecution established Rose could still be convicted of murder beyond a reasonable doubt. He contends that, instead, the trial court applied something "equivalent to the substantial evidence standard."

At the time of the evidentiary hearing, the statutory mandate was clear that the burden of proof was "on the prosecution to prove, beyond a reasonable doubt, that the petitioner [was] ineligible for resentencing." (See fmr. § 1170.95, subd. (d)(3).) There was a split of authority only as to whether, in assessing if the beyond a reasonable doubt standard had been met, the trial court was to act as an independent factfinder or apply the equivalent of a substantial evidence test. (See *People v. Garrison* (2021) 73 Cal.App.5th 735, 745.)[4]

---

[4] Only this Division of this court published a decision holding that at a section 1172.6, subdivision (d)(3) hearing, the trial court was to conduct the equivalent of a substantial evidence review. Our Supreme Court ordered this court to vacate this opinion in *People v. Duke*, S265309, Supreme Court Minutes, November 23, 2021, in light of new legislation abrogating *Duke*, effective January 1, 2022. Thus, at the time of the evidentiary hearing, the weight of authority required the trial court to act as an independent factfinder, and as discussed above, Rose has not

Rose does not point to anything in the record that indicates the trial court did not apply the correct standard.[5] In support of his argument, Rose observes the trial court never stated the words "beyond a reasonable doubt" at the evidentiary hearing and concluded the hearing by saying, "So based upon all of this, I don't think he's entitled to relief . . . .  I'm going to deny the petition."

Rose is correct that the trial court did not expressly state that it applied a reasonable doubt standard.  However, he has not identified any authority that requires the court to state on the record that its factual finding was beyond a reasonable doubt. Indeed, when, as here, there is no question as to the applicable standard of proof, the trial court need not articulate that standard and it is presumed that the trial court applied the correct standard.  (See Evid. Code, § 664; *Peake v. Underwood* (2014) 227 Cal.App.4th 428, 447; *People v. Mack* (1986) 178 Cal.App.3d 1026, 1032.)  Further, we observe that the trial court also did not state it reviewed the record for substantial evidence. Moreover, we are also not persuaded by Rose's conclusory argument that the court's statement that it did not think Rose was entitled to relief demonstrates that the court applied the wrong standard.

---

shown that the trial court chose to act contrary to the weight of authority.

[5] On appeal, we presume the trial court's order was correct, and it is Rose's burden to show that the trial court erred.  (See *People v. Kraft* (2000) 23 Cal.4th 978, 1050 ["on appeal all presumptions favor the judgment"]; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 ["all intendments and presumptions are indulged in favor of [the trial court's order's] correctness"].)

Our review of the October 29, 2021, hearing transcript also fails to yield any evidence in support of Rose's argument. To the contrary, our review indicates the trial court understood it was to act as an independent factfinder. As it stated, "my responsibility is to provide an independent review, make a decision based upon what I read, what's presented, the transcript, et cetera."

The parties understood as well. The prosecutor acknowledged in his argument that the court was to make an "independent assessment" of the facts in the matter, suggesting the trial court could not simply review the record for substantial evidence. Additionally, the prosecution understood it had the burden to prove theories by which Rose could be held responsible under existing law. It described, inter alia, the facts that Rose and Gregory planned to kill Johnson, they drove to the location where they expected to find Johnson, Sander's testimony as contrary to Rose's assertion that he was a lookout who remained in the car, and that Rose had the intent to kill Johnson.

For his part, Rose advised the court multiple times in his written submissions that the prosecutor was required to prove beyond a reasonable doubt that the conviction could be obtained based upon a currently valid legal theory and that the court was to engage in independent factfinding. The court did not disagree with Rose at the hearing concerning the standard it was to apply; nor did Rose object at the hearing that the court appeared to apply an incorrect standard.[6]

---

[6] When a party fails to object in the trial court, we may treat the issue as forfeited on appeal. (See *People v. Rogers* (2009) 46 Cal.4th 1136, 1175.)

Thus, Rose has not demonstrated that the trial court did not conduct an independent assessment of the evidence, finding beyond a reasonable doubt, that Rose could still be convicted of murder.

## DISPOSITION

The trial court's order of October 29, 2021 is affirmed.

NOT TO BE PUBLISHED

BENKE, J.*

We concur:

ROTHSCHILD, P. J.

CHANEY, J.

---

* Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.