Filed 7/10/25

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| Conservatorship of the Person and Estate of ANNE S. | B333052 |
| MARC B. HANKIN, | (Los Angeles County Super. Ct. No. 22STPB07456) |
| Petitioner and Appellant, | |
| v. | |
| ANNE S., | |
| Objector and Respondent. | |


APPEAL from orders of the Superior Court of Los Angeles County, Jessica A. Uzcategui, Judge. Affirmed.

Marc B. Hankin, in pro. per.; and Evan D. Marshall for Petitioner and Appellant.

Jeffer, Mangels, Butler & Mitchell and Vatche J. Zetjian for Objector and Respondent.

_____

Marc B. Hankin appeals a probate court order granting judgment on the pleadings and dismissing his petition for the appointment of a probate conservator for Anne S.[1] Hankin also appeals the court's imposition of $5,577 in sanctions. In this appeal, we consider who is authorized by Probate Code section 1820 to petition for the appointment of conservators and whether the trial court correctly concluded Hankin was not so authorized in this case. Because we agree Hankin is not an authorized petitioner and sanctions were appropriate, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On July 28, 2022, attorneys G. Scott Sobel and Marc B. Hankin petitioned for Sobel's appointment as probate conservator of the person and estate of Anne (the Joint Petition). Hankin represented Sobel for purposes of the Joint Petition. Hankin is also Anne's "neighbor" who "lives one street to the east"; he met Anne once "while [he] and his wife were taking a walk," and he "chatted [with her] for several minutes." Sobel stated he had known Anne and her now-deceased husband since 1990, and he was "a constant confidant and adviser to Anne." Barbara Lerer, who had been Anne's health care agent under a 2007 advanced healthcare directive, joined the Joint Petition as a co-petitioner in favor of Sobel's appointment.

The Joint Petition was supported by a number of declarations from Anne's family (including her stepson, Jonathan S.), friends, medical personnel, and other individuals. Essentially, it alleged Anne was being unduly influenced and

---

[1] We refer to Anne and her stepson, Jonathan S., by first names and last initials. (See Cal. Rules of Court, rule 8.90(b)(2), (11).)

2

possibly mistreated by her housemate, Nadine Brownen. It also claimed Brownen attempted to orchestrate a sale of Anne's home.

Anne, through attorney Vatche J. Zetjian, objected to being placed under conservatorship and objected to the Joint Petition on August 9, 2022. In October 2022, Lerer requested her joinder to the Joint Petition be dismissed without prejudice.

Several months later in January 2023, Jonathan filed a competing petition requesting his own appointment as Anne's conservator. That petition relied upon the declarations submitted in connection with the Joint Petition in August 2022 to assert Anne could not provide for her personal needs or manage her financial resources.

Thereafter, on January 30, 2023, Anne, Jonathan, and Lerer executed a Settlement Agreement to resolve their disputes arising from the conservatorship proceedings. Among its provisions, the Settlement Agreement included Brownen's signed agreement to move out of Anne's home in exchange for a total of $10,000 in payments to Brownen, agreements by Anne for certain professionals to manage her finances, personal affairs, and medical care, and an agreement Anne would not change her trust or sell her home without a court order. The Settlement Agreement was signed by attorney Zetjian as counsel for Anne and was contingent on court approval. In order to facilitate that approval, Jonathan filed a petition to be appointed Anne's temporary conservator.

On February 14, 2023, Sobel substituted Hankin out as his attorney and proceeded pro se. That same day, Sobel requested dismissal of his portion of the Joint Petition. After Sobel withdrew, Hankin maintained the petition for appointment of a conservator in his own right. We will refer to the Joint Petition

3

after Sobel's dismissal as the Hankin Petition. Hankin also sought an order authorizing a doctor to complete a capacity declaration regarding Anne, which the court denied.

On March 13, 2023, Jonathan moved ex parte for the trial court to approve the Settlement Agreement. The following day, Hankin opposed on the ground Anne had no capacity to sign the Settlement Agreement or other legal documents. The court then appointed Jonathan as temporary conservator with limited powers to approve petitions to approve the Settlement Agreement and for a substituted judgment. On March 24, 2023, Jonathan duly petitioned for approval of the Settlement Agreement. Hankin opposed the settlement.

Meanwhile, on April 5, 2023, Anne, still represented by Zetjian, moved for sanctions against Hankin pursuant to Code of Civil Procedure section 128.7. She argued Hankin was a stranger to her with "no legal authority to bring . . . a petition or to participate in conservatorship matters concerning [her]." Anne asserted the pendency of the Hankin Petition and Hankin's opposition to the settlement wrongfully delayed the implementation of the Settlement Agreement and had caused her and other parties to incur additional expenses. She asked for $5,577 in attorney fees incurred since Sobel's withdrawal of his petition on February 14, 2023. Jonathan joined the motion and asked for $6,720 for his attorney fees. Hankin opposed sanctions on the grounds his claims and contentions were not frivolous and were warranted by existing law.

Through attorney Zetjian, Anne moved for judgment on the pleadings and to dismiss the Hankin Petition for lack of standing on May 4, 2023. Jonathan and Lerer joined the motion. Hankin opposed it.

4

On July 20, 2023, the trial court granted Anne's motion for judgment on the pleadings and determined Hankin lacked standing to petition for conservatorship of Anne pursuant to Probate Code section 1820.[2] On the same date, the court granted Anne's motion for sanctions in part: it determined the Hankin Petition was legally frivolous and awarded $5,577 in sanctions against Hankin, payable to Anne. It declined to award the sanctions requested by Jonathan. Hankin timely appealed both orders. (See Code Civ. Proc., § 904.1, subd. (a)(1), (12); Cal. Rules of Court, rule 8.104(a), (e).)

DISCUSSION

## I. The Trial Court Did Not Err in Granting Judgment on the Pleadings

The trial court determined "Hankin does not meet any of [the] criteria" to maintain a petition pursuant to section 1820, and therefore "the petition does not state facts sufficient to constitute a cause of action." (See *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 112 ["lack of standing . . . and the failure to state facts sufficient to constitute a cause of action . . . are general grounds for demurrer" and are both "considered a failure to state facts sufficient to constituted a cause of action"]; see also Code Civ. Proc., § 430.10, subds. (b), (e).) The trial court did not err.

### A. Standard of Review

" 'A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of

---

[2] All further undesignated references are to the Probate Code.

5

review.' " (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.)

### B. A Section 1820 Petition Must Be Brought by a Proper Party

In general, "every action [must] be prosecuted in the name of the real party in interest." (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1004; see also Code Civ. Proc., § 367.) "Generally, 'the person possessing the right sued upon by reason of the substantive law is the real party in interest.' " (*Del Mar Beach Club Owners Assn. v. Imperial Contracting Co.* (1981) 123 Cal.App.3d 898, 906.) A party "lack[s] standing" if he is "not the real party in interest." (*Cloud*, at p. 1004.) If a court "finds [a party has] no standing, it should sustain the demurrer or dismiss the petition." (*Barefoot v. Jennings* (2020) 8 Cal.5th 822, 827 [§ 17200 standing].)

In the specific context of section 1820, "the proposed conservatee, spouse, domestic partner, relative, or other 'interested' agency, person, or friend has standing to file a petition for a probate conservatorship." (*Conservatorship of John L.* (2010) 48 Cal.4th 131, 144, quoting § 1820, subd. (a).) When interpreting those terms, " ' " ' "[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd

6

consequences the Legislature did not intend." ' " ' " (*In re N.R.* (2023) 15 Cal.5th 520, 538.)

### C.  Hankin Has No Standing to Petition Under Section 1820

Hankin argues he has standing to petition for conservatorship of Anne as an " 'interested person' " or a " 'friend.' " The record shows Hankin's association with Anne is limited to being her "neighbor" who "lives one street to the east," meeting her once "while [he] and his wife were taking a walk," and "chatt[ing] for several minutes." Hankin has cited no authority in which an individual with such a fleeting and tenuous connection to the proposed conservatee has successfully petitioned for conservatorship. On the contrary, well-settled law plainly supports the trial court's conclusion Hankin is neither an interested person nor a friend for purposes of section 1820.

#### 1.  Hankin Is Not an "Interested Person"

The Legislature expressly defined what it meant by "interested person" for purposes of the Probate Code. Section 48 defines an " 'interested person' " as: "(1) An heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding. [¶] (2) Any person having priority for appointment as personal representative. [¶] (3) A fiduciary representing an interested person." (§ 48, subd. (a); see also § 20.) It also notes the definition "of 'interested person' as it relates to particular persons may vary from time to time and shall be determined according to the particular purposes of, and matter involved in, any proceeding." (§ 48, subd. (b).) For purposes of conservatorship proceedings, the Probate Code further provides " '[i]nterested person' includes, but

7

is not limited to: [¶] (a) Any interested state, local, or federal entity or agency. [¶] (b) Any interested public officer or employee of this state or of a local public entity of this state or of the federal government." (§ 1424, subds. (a)–(b); see also § 1401.)

Courts have traditionally characterized an "interested person" under the Probate Code as someone who could be financially affected by the probate proceedings. (See *Estate of Prindle* (2009) 173 Cal.App.4th 119, 126–127 [insurance company was an interested person]; see also *Tepper v. Wilkins* (2017) 10 Cal.App.5th 1198, 1206 ["simply being [an elder's] child is not sufficient to confer standing" where child had no "legally cognizable interest in her mother's revocable living trust"]; *Estate of Sobol* (2014) 225 Cal.App.4th 771, 782 [interested person has " ' "a property right in or claim against a trust estate . . . which may be affected by the proceeding" ' "]; *Estate of O'Brien* (1966) 246 Cal.App.2d 788, 792 ["An 'interested person' is one who has a pecuniary interest . . . ."].) In other probate contexts, courts have explained that limitation serves the important purpose of "prevent[ing] persons with no interest from delaying the settlement of the estate." (*Estate of Plaut* (1945) 27 Cal.2d 424, 429 [will contest]; see also *Barefoot v. Jennings*, *supra*, 8 Cal.5th at p. 828 [rejecting an expansive view of § 17200 standing that would "allow individuals with no interest in a trust to bring a claim against the trust"].)

With that in mind, we note Hankin has neither identified an ambiguity in the statutory definitions of "interested person," nor explained how he qualifies as one under those definitions or the cases interpreting that term. Rather, he argues he is entitled to standing because he seeks a conservatorship "for the personal protection of an incompetent," and thus his standing "should be

8

evaluated according to the needs and circumstances of the proposed conservatee." More broadly, he asserts it would generally be beneficial to encourage neutral advocates "of the elder's needs" to come forward, particularly because few people are "willing to shoulder a legal action to protect [a] senior."[3] On the other hand, Anne argues an expansive interpretation of section 1820 standing risks "weaponization of the conservatorship process" "by a nosy stranger," potentially subjecting elders to "debilitating, costly legal battles."

As a court, it is not our role "to ' "sit in judgment of the Legislature's wisdom in balancing such competing public policies." ' " (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1113.) Instead, we must " 'follow the public policy choices actually discernible from the Legislature's statutory enactments.' " (*Id.* at p. 1114.) The statutory language, purpose, and context here clearly support the trial court's conclusion Hankin had no standing as an "interested person" pursuant to section 1820. For that reason, Hankin's "argument . . . the statutes could or 'should have been written differently [is] more appropriately addressed to the Legislature' " in the first instance. (*Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 26.)

At bottom, Hankin's unsupported personal opinion that the law *should* give him standing is irrelevant to our determination of whether it *actually does*. (See *Peake v. Underwood* (2014) 227 Cal.App.4th 428, 442–444 (*Peake*) [party's novel

---

[3] That is not a concern in this case, where multiple concerned individuals sought to protect Anne.

9

interpretation of the statute was not supported by "any reasonable legal principles"].) And even if a trial court has some discretion to allow someone to proceed as an interested party (see *Estate of Sobol, supra,* 225 Cal.App.4th at p. 782), the trial court's refusal to do so here was reasonable in light of Hankin's fleeting and tangential association with Anne.

Thus, the trial court did not err in concluding Hankin is not an interested person under section 1820.

## 2. Hankin Is Not Anne's "Friend"

Hankin also argues he is a "friend" of Anne for purposes of section 1820. The Probate Code does not specifically define "friend." That conveys the Legislature's intention "for [the] term to bear its ordinary meaning." (*In re N.R., supra,* 15 Cal.5th at p. 539.) "[D]ictionaries can provide a helpful resource for ascertaining the common meanings attached to a word or phrase." (*Ibid.*) The Oxford English Dictionary defines "friend [noun]" as "[a] person with whom one has developed a close and informal relationship of mutual trust and intimacy; (more generally) a close acquaintance." (Oxford English Dict. Online (3d ed. 2024) <https://doi.org/10.1093/OED/7018253925> [as of July 2, 2025] archived at <https://perma.cc/S2D4-KCVW>.) Merriam-Webster Unabridged Dictionary defines "friend" as "one that seeks the society or welfare of another whom he or she holds in affection, respect, or esteem or whose companionship and personality are pleasurable: an intimate associate especially when other than a lover or relative." (Merriam-Webster Unabridged Dict. (Online 2025) <https://unabridged.merriam-webster.com/unabridged/friend> [as of July 2, 2025] archived at <https://perma.cc/UB5V-3MKZ>.) Those definitions suggest the

10

term "friend" refers to a mutual relationship with some degree of intimacy or closeness.

Hankin's assertion of his ostensible friendship with Anne rests entirely upon his unilateral view of their purported relationship–for example, that "he encountered and befriended" Anne on one occasion while walking in his neighborhood. On the other hand, Anne stated "on the Court record at the hearing on March 14, 2023," that "she does not know Mr. Hankin and that he is a complete stranger." Hankin has not disputed that Anne does not consider him a friend. That, in combination with Hankin's single fleeting neighborhood interaction with her, is fatal to his argument.[4] On this record, the trial court did not err in concluding Hankin was not Anne's "friend."

Hankin proposes a novel six-factor test to determine "who may be considered a 'friend' of the proposed conservatee." We decline to adopt that idiosyncratic test, which is not grounded in caselaw, the Probate Code, or any ordinary definition of "friend." Nor has Hankin identified " 'more than one reasonable interpretation' " of section 1820 that would allow us to consider the public policy arguments he makes in favor of his test. (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 166.)

### 3.    Hankin Is Not Otherwise Entitled to Standing

Hankin does not argue he qualifies under any of the remaining categories of possible petitioners listed in section 1820, subdivision (a). (See § 1820, subd. (a)(1)–(4).) Nevertheless, to the

---

[4]    Although we can imagine factual scenarios in which the term "friend" could be ambiguous, those are not presented here and we do not consider them.

11

extent he argues standing under section 1820 widely extends to "any person," we do not agree. If the Legislature intended to extend standing under section 1820 to a broad swath of individuals, it could have simply given standing to "any person," a phrase it has used frequently in the Probate Code and other statutes. (See *Suleman v. Superior Court* (2010) 180 Cal.App.4th 1287, 1297 & fn. 2.) Its decision not to use that term in section 1820 suggests it did not intend to allow "any person" to petition for a conservatorship. (See *Suleman,* at pp. 1297–1298 [Legislature's use of " 'other person on behalf of the minor' " in § 1510 suggests its "definition . . . is different from" " 'any person' " or " 'interested person' "].)

We are also not persuaded by Hankin's argument he is entitled to standing because "[p]rofessional conservators routinely act as petitioners" although they "hardly qualif[y] as a 'friend' " or an interested person under the trial court's definition. As we have already explained, the Probate Code expressly includes in the definition of an " 'interested person' " "[a] fiduciary representing an interested person." (§ 48, subd. (a)(3).) And when a conservatorship "petitioner . . . is a professional fiduciary," the Code requires his petition to comply with certain additional requirements. (§ 1821, subd. (c); see § 2340.) Thus, the reference to professional conservators as possible petitioners in section 1821, subdivision (c) does not advance Hankin's contention that the list in section 1820, subdivision (a) is not exhaustive and can apply to any person.[5]

---

[5] We need not resolve the precise contours of a professional conservator's standing now because Hankin does not contend he is a professional conservator. (See *Burden v. Snowden* (1992)

12

**D.    We Do Not Entertain Hankin's Remaining Arguments**

In light of our conclusion Hankin lacks standing, we need not consider his arguments regarding the supposed harms resulting from dismissal of his petition.

We also decline to consider arguments Hankin made for the first time in his reply brief, including his assertions the trial court made other incorrect decisions and engaged in supposed wrongdoing. They are forfeited. (See *People v. Mickel* (2016) 2 Cal.5th 181, 197 ["Ordinarily, we do not consider arguments raised for the first time in a reply brief."]; *Shih v. Starbucks Corp.* (2020) 53 Cal.App.5th 1063, 1071, fn. 4 [the plaintiff "forfeited this argument . . . by failing to raise it in her opening brief"].)

## II.    The Trial Court Did Not Abuse Its Discretion in Imposing Sanctions

The trial court imposed sanctions of $5,577 on Hankin for maintaining the Hankin Petition after Sobel's withdrawal. We conclude the award was reasonable.

**A.    Standard of Review and Legal Framework**

An award of sanctions pursuant to Code of Civil Procedure section 128.7 is reviewed for abuse of discretion. (*Peake, supra,* 227 Cal.App.4th at p. 441.) A trial court abuses its discretion when it exercises it " ' "in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Williams* (2013) 58 Cal.4th 197, 270–271;

---

2 Cal.4th 556, 570 ["Because we find the [statute] inapplicable, we need not and do not decide the other issues raised by the parties regarding" its interpretation]; cf. §§ 1821, subd. (c), 2340.)

see also *Gonzales v. Nork* (1978) 20 Cal.3d 500, 507 ["as long as there exists 'a reasonable or even fairly debatable justification . . . for the [trial court's decision], such action will not be . . . set aside' "].)

"[A] court may impose sanctions . . . if the court concludes the pleading was filed for an improper purpose or was indisputably without merit, either legally or factually." (*Peake*, *supra*, 227 Cal.App.4th at p. 440; see also Code Civ. Proc., § 128.7, subds. (b)–(c).) The moving party must also "show the party's conduct in asserting the claim was objectively unreasonable," meaning " 'any reasonable attorney would agree that [it] is totally and completely without merit.' " (*Peake*, at p. 440.)

## B. The Trial Court Reasonably Determined Hankin's Petition Was Legally Frivolous

The trial court determined Hankin's petition was legally frivolous when "Hankin . . . proceeded with the petition and alleged he had standing on his own behalf," after Sobel had withdrawn. A claim "is legally frivolous if it is 'not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.' " (*Peake*, *supra*, 227 Cal.App.4th at p. 440.)

As explained above, Hankin's argument that he has standing as an "interested person" or "friend" to petition for Anne's conservatorship is unwarranted by existing law. Hankin cited no authority suggesting a neighbor, who once chatted for a few minutes with the proposed conservatee during a walk and

14

whom the proposed conservatee regards as a stranger, was an interested person or friend for purposes of section 1820.[6]

Thus, Hankin must demonstrate the trial court abused its discretion in concluding there was no good faith argument for the modification of existing law to extend standing to persons like him. He has not done so. Hankin argues he should have standing because he was "an independent voice" and sought "to protect the innocent." But Hankin's policy arguments to broaden section 1820 standing "[are] not founded on any reasonable legal principles." (*Peake, supra,* 227 Cal.App.4th at p. 443.) Moreover, when " 'statutory language is unambiguous, "we presume the Legislature meant what it said, and the plain meaning of the statute governs." ' " (*Ibid.*) Although we do not foreclose the possibility the language of section 1820 could be ambiguous in some factual circumstances not presented here, it not ambiguous on this record. There is thus no room for us to " ' "rewrite the law or give [its] words an effect different from the plain and direct import of the terms used." ' " (*Peake,* at p. 443.)

---

[6]     Hankin argues two "Law Revision Commissioners" told him "Probate Code § 48 [defining an interested person] did not govern Probate Code § 1820." (Italics omitted.) Even if Hankin's recollection of unspecified conversations at unspecified times is accurate, no reasonable attorney would believe those amounted to binding statements of existing law, particularly when the Probate Code specifically provides otherwise (and has so provided for nearly 35 years). (See § 20 ["the definitions in this part govern the construction of this code"]; cf. former § 20, added by Stats. 1983, ch. 842, § 21, and repealed by Stats. 1990, ch. 79, § 13, eff. July 1, 1991.)

Considering this record as a whole, we conclude the trial court did not abuse its discretion in awarding sanctions. Hankin's arguments for his own standing clearly lacked merit "under well-settled law," he presented no "colorable legal or factual argument . . . supporting an extension of existing law" to those circumstances, and Anne's counsel provided Hankin with specific legal and factual grounds during the statutory safe harbor period demonstrating Hankin's standing arguments had no merit. (*Peake, supra,* 227 Cal.App.4th at pp. 448–449.)[7]

## DISPOSITION

The orders are affirmed. Anne is entitled to costs on appeal. (See Cal. Rules of Court, rule 8.278(a)(4).)

RICHARDSON, J.

WE CONCUR:

LUI, P. J.

CHAVEZ, J.

---

[7] Because sanctions were warranted on that ground, we do not address whether Hankin's petition also had an improper purpose. (See *Eichenbaum v. Alon* (2003) 106 Cal.App.4th 967, 976 ["A violation of any of [the conditions in section 128.7, subdivision (b)] may give rise to sanctions."].)